**Case No. 22-55023**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

ELWYN ROBINSON, an individual,

*Plaintiff and Appellant,*

v.

PPG Industrial, Inc., a Pennsylvania Corporation; DOES 1 through 10, Inclusive,

*Defendants and Appellees,*

DAVID SEBOLD,

*Defendant.*

---

On Appeal form the United States District Court
for the Central District of California
Case Number 2:19-cv-04033 ODW (RAOx)
Honorable Otis D. Wright, II

---

**APPELLANT ELWYN ROBINSON'S OPENING BRIEF**

---

David R. Denis, Esq.  (SBN 193143)
Armando M. Galvan, Esq.  (SBN 143475)
Law Offices of David R. Denis, P. C.
707 S. Wilshire Blvd. Suite 4700
Los Angeles, California 90017
Telephone: 213-625-0033
Email:  David@extreme-justice.com

*Attorneys for Plaintiff and Appellant*,
**ELWYN ROBINSON**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES ...................................................................iv

APPELLANT'S BRIEF ............................................................................1

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION .................................................2

STATUTORY AUTHORITIES AND PERTINENT RULES ..............3

ISSUES PRESENTED FOR REVIEW ..............................................3

STATEMENT OF THE CASE ............................................................4

Factual and Procedural Background ..............................................4

The Pleadings in State Court and The Notice of Removal. ...........4

Proceedings Below ............................................................................5

The Appellant's Motion to Remand, the Opposition, and
the Ruling of the District Court Denying the Motion. ..................5

The First Defense Motion for Summary Judgment ......................6

The District Court's Erroneous and Gravely Prejudicial
Denial of Appellant's Motion to Continue the
September13, 2021 Hearing on PPG's Motion for
Summary Judgment. ......................................................................8

The District Court's August 2021 Order to Show Cause
and Related Rulings Including the Order Striking
Corrected Separate Statement, and the Denial of the
Request to Strike PPG's Non-compliant Reply Separate
Statement. ......................................................................................9

The Opposition to the Motion for Summary Judgment,
the Facts Presented to the Trial Court Raising Genuine
Issues of Fact, and the Decision Granting of Summary
Judgment. .....................................................................................11

SUMMARY OF THE ARGUMENT .................................................14

STANDARDS OF REVIEW .............................................................16

ARGUMENT ...................................................................... 17

I.  GIVEN THE DIRECT EVIDENCE OF MOTIVE, THE DISTRICT COURT INCORRECTLY APPLIED THE *McDONNEL DOUGLAS* BURDEN SHIFTING TEST TO THIS AGE DISCRIMINATION CASE. ............................... 17

II.  THE DISTRICT COURT INCORRECTLY APPLIED THE EVIDENCE BEFORE IT; EVEN A PROPER *McDONNEL DOUGLAS* BURDEN SHIFTING TEST ANALYSIS WARRANTED DENIAL OF THE MOTION FOR SUMMARY JUDGMENT. ................................. 24

A.  Robinson Did Have Relevant Experience. ............................... 25

B.  Robinson Scored Well On Sebold's Subjective Phone Grading and Discovery Thwarted by Appellee. ....................... 30

C.  Robinson Was Not Overqualified For The Position and Appellee's "Legitimate, Non-Discriminatory" Reasons Fail. ....................................................................... 31

D.  Circumstantial Evidence as to PPG's Shifting Explanations for Not Interviewing Appellant. ....................... 35

E.  Robinson Stated a Prima Facie Cause of Action for Retaliation. ....................................................................... 36

F.  Genuine Issues Of Material Fact Defeat Defendant's Summary Judgment As To Plaintiff's Claim For Failure To Prevent and Punitive Damages. ............................ 40

III.  THE DISTRICT COURT HAD NO JURISDICTIONAL AUTHORITY TO ENTER JUDGMENT AND THE ORDER DENYING APPELLANT'S MOTION TO REMAND BACK TO THE STATE COURT SHOULD BE REVERSED. ................................................................ 41

IV.  THE VARIOUS PROCEDURAL RULINGS OF THE DISTRICT COURT EACH MILITATED TO EFFECT AN UNFAIR MISCARRIAGE OF JUSTICE AND WERE AN ABUSE OF DISCRETION, WARRANTING REVERSAL OF THE RESULTING JUDGMENT. ................... 52

A.  The District Court Erred in Failing to Grant Appellant's Motion to Continue Hearing on PPG's Motion for Summary to Allow Further Discovery. ................. 52

B. The Lower Court's OSC Rulings Disregarding the Appellant's Late Opposition, the Order Striking Corrected Separate Statement and The Denial of the Request to Strike PPG's Non-compliant Reply Separate Statement Demonstrate an Abuse of Discretion. .... 58

CONCLUSION ..................................................... 63

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ........................................... 64

CERTIFICATE OF COMPLIANCE ...................................... 65

CERTIFICATE OF SERVICE ............................................ 66

ADDENDUM ....................................................... 67

# TABLE OF AUTHORITIES

Page

**Cases:**

*Abed v. Western Dental Servs., Inc.*
 23 Cal.App.5th 726 (2018) ........................................................ 25, 34

*Adickes v. S.H. Kress & Co.*
 398 U.S. 144 (1970) ................................................................. 18, 19

*Anderson v. Donahue*
 699 F.3d 989 (2012) ...................................................................... 25

*Anderson v. Liberty Lobby, Inc.*
 477 U.S. 242 (1986) ......................................................... 18, 34, 57

*Atchison, Topeka & Santa Fe R.R. v. Hercules Inc.*
 146 F.3d 1071 (9th Cir. 1998) ...................................................... 58

*Aydin Corp. v. Loral Corp.*
 718 F.2d 897 (9th Cir. 1983) ........................................................ 21

*Brodheim v. Cry*
 584 F.3d 1262 (9th Cir. 2009) ...................................................... 39

*California ex rel. Lockyer v. Dynegy, Inc.*
 375 F.3d 831 (9th Cir. 2004) ........................................................ 42

*California ex Rel. Lockyer v. Dynegy, Inc.*
 387 F.3d 966 (9th Cir. 2004) ........................................................ 42

*Daniels v. Select Portfolio Servicing, Inc.*
 246 Cal.App.4th 1150 (2016) ....................................................... 19

*Dart Chrokee Basin Operating Co., LLC. v. Owens*
 574 U.S. 81 (2014) ........................................................................ 51

*Davis v. Chevron U.S.A., Inc.*
 14 F.3d 1082 (5th Cir. 1994) ........................................................ 20

*Dawson v. Entek Intern.*
 630 F.3d 928 (9th Cir. 2011) ........................................................ 48

*Dee v. Vintage Petroleum, Inc.*
 106 Cal.App.4th 30 (2003) ........................................................... 48

iv

*DeJung v. Superior Court*
  169 Cal.App.4th 523 (2008)  .............................................................. 23

*DeJung v. Superior Court*
  169 Cal.App.4th 533 (2008)  .................................................... 20, 24

*Dodson v. Runyon*
  86 F.3d 37 (2d Cir. 1996)  ........................................................ 62, 63

*Emrich v. Touche Ross & Co.*
  846 F.2d 1190 (9th Cir. 1988)  ........................................................ 16

*Equal Emp.'t Opportunity Comm'n v. Ins. Co. of North Am.*
  *(Ins. Co.)*
  49 F.3d 1418 (9th Cir. 1995)  .......................................................... 32

*Fisher v. San Pedro Peninsula Hosp.*
  214 Cal.App.3d 590 (1989)  ............................................................ 38

*Fresno Motors, LLC v. Mercedes Benz USA, LLC.*
  771 F.3d 1119 (9th Cir. 2014)  .................................................. 18, 35

*Gananian v. Wagstafhe*
  199 Cal.App.4th 1532 (2011)  ........................................................ 43

*Grancare, LLC v. Thrower by & through Mills*
  889 F.3d 543 (9th Cir. 2018)  ........................................................ 42

*Guz v. Bechtel Nat. Ins.*
  24 Cal.4th 317 (2000)  .................................................................... 25

*Hamilton Materials, Inc. v. Dow Chem. Corp.*
  494 F.3d 1203 (9th Cir. 2007)  ...................................................... 42

*Harris v. Forklift Sys., Inc.*
  510 U.S. 17 (1993)  ........................................................................ 27

*Harris v. Rand*
  682 F.3d 846 (9th Cir. 2012)  ........................................................ 50

*Henry v. Gill Indus., Inc.*
  983 F.2d 943 (9th Cir. 1993)  ........................................................ 60

*Hertz Corp. v. Friend*
  559 U.S. 77 (2010)  ................................................................ 49, 50

*Hollander v. Am. Cyanamid Co.*
  895 F.2d 80 (2d Cir. 1990)  ........................................................ 30, 52

*Hunter v. Philip Morris USA*
    582 F.3d 1039 (9th Cir. 2009)  .................................................. 42, 45

*Husman v. Toyota Motor Credit Corp.*
    12 Cal.App.5th 1168 (2017)  ............................................................ 36

*Janken v. GM Hughes Elec.*
    46 Cal.App.4th 55 (1996)  ................................................................ 45

*Jauregui v. Roadrunner Transp. Servs., Inc.*
    28 F.4th 989 (9th Cir. 2022)  ........................................................... 51

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*
    845 F.2d 1172 (2d Cir. 1988)  .......................................................... 17

*Jorgensen v. Loyola Marymount Univ.*
    68 Cal.App.5th 882 (2021)  .............................................................. 19

*Mamou v. Trendwest Resorts, Inc.*
    165 Cal.App.4th 686 (2008)  ............................................................ 36

*Masson v. New Yorker Magazine*
    501 U.S. 496 (1991)  ......................................................................... 34

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
    475 U.S. 574 (1986)  ......................................................................... 34

*McCoy v. Pac. Mar. Assn.*
    216 Cal.App.4th 283 (2013)  ............................................................ 39

*Metabolife Int'l. v. Wornick*
    264 F.3d 832 (9th Cir. 2001)  ........................................................... 57

*Michelman v. Lincoln Nat. Life Ins. Co.*
    685 F.3d 887 (9th Cir. 2012)  ..................................................... 17, 52

*Miranda v. Southern Pac. Transp. Co.*
    710 F.2d 516 (9th Cir. 1983)  ............................................. 17, 58, 59

*Morgan v. Regents of Univ. of Calif.*
    88 Cal.App.4th 52 (2000)  ................................................................ 23

*Nazir v. United Airlines, Inc.*
    178 Cal.App.4th 243 (2009)  ............................................................ 18

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*
    212 F.3d 493 (9th Cir. 2000)  ........................................................... 38

*Raad v. Fairbanks North Star Borough Sch. Dist.*
  323 F.3d 1185 (9th Cir. 2003) .......................................................... 36

*Reeves v. MV Transp., Inc.*
  186 Cal.App.4th 666 (2010) ............................................................... 33

*Reeves v. Safeway Stores, Inc.*
  121 Cal.App.4th 95 (2004) ................................................................. 23

*Roby v. McKesson Corp.*
  47 Cal.4th 686 (2010) ......................................................................... 45

*Shager v. Upjohn Co.*
  913 F.2d 398 (7th Cir. 1990) .............................................................. 24

*Sischo–Nownejad v. Merced Comty. Coll. Dist.*
  934 F.2d 1104 (9th Cir. 1991) ............................................................ 24

*Steiner v. Rowley*
  35 Cal.2d 713 (1950) ........................................................................... 43

*Taggart v. Time Inc.*
  924 F.2d 43 (2d Cir. 1991) ......................................................... 32, 33

*Taylor v. List*
  880 F.2d 1040 (9th Cir. 1989) ............................................................ 16

*Trop v. Sony Pictures Entm't Inc.*
  129 Cal.App.4th 1133 (2005) ...................................................... 18, 20

*Trujillo v. North Cnty. Transit Dist.*
  63 Cal.App.4th 280 (1998) ................................................................. 41

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*
  784 F.2d 1472 (9th Cir. 1986) ............................................................ 53

*Volk v. D.A. Davidson & Co.*
  816 F.2d 1406 (9th Cir. 1987) ............................................................ 52

*White v. Ultramar, Inc.*
  21 Cal.4th 563 (1999) ......................................................................... 41

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*
  694 F.3d 155 (2d Cir. 2012) .............................................. 61, 62, 63

*Yanowitz v. L'Oreal USA, Inc.*
  36 Cal.4th 1028 (2005) ................................................. 26, 27, 36, 38

**Statutes:**

28 U.S.C. § 1291 ................................................................. 3

28 U.S.C. § 1441 ................................................................ 41

Cal. Evid. Code § 412 ...................................................... 30

Cal. Gov't Code § 12940 ........................................... 4, 5, 27

**Court Rules:**

Fed. R. Civ. P., rule 56 ..................................................... 52

**Appellant's Brief**

## INTRODUCTION

Plaintiff and Appellant Elwyn Robinson ("Appellant" or "Robinson") appeals from a judgment entered in favor of defendant and Appellee PPG Industrial, Inc. ("Appellee" or "PPG") rendered following judicial errors in granting the motion for summary judgment and in denying Appellant's motion to remand the case to state court. The errors were partly induced by undisclosed information that later came to light of Appellee's extensive "nerve center" operations in California defeating federal diversity jurisdiction. By means of obfuscation, blocking of discovery needed by Appellant, and even concealment of material facts from the district court, Appellee prevailed.

In connection with the summary judgment proceedings, the district court utterly disregarded as of no evidentiary value Appellant's dispositive evidence, consisting of email communications to and regarding Appellant as a senior applying for PPG aerospace job. First, there is the statement of "too senior" and email wherein a PPG agent wrote: "I spoke to the [PPG] manager on Friday[;] he is concerned about you being too senior for the role." (8-ER-1407:17–21.) The "too senior" phrase is analogous to a comment, you are "too black" for the job, an obvious dispute of a material fact and direct evidence linking discriminatory animus to PPG's failure to do an in-person interview and

hire Appellant. In another email constituting direct evidence PPG illegally requires the age, citizenship, and birth country (national origin) data of its potential applicants. In her email Talitha Mauldin, executive assistant to the managing agents at PPG, baldly states: "Ron – Please send me the candidates full name, DOB, citizenship and birth country." (2-ER-159:18–24, 231–32). Then, another email dissolves the force of Appellee's denial of having any knowledge of a complaint form Robinson. In this "smoking gun" email from PPG hiring manager David Sebold to Ron Lyndon, PPG's agent and recruiter, Sebold plainly acknowledges Robinson's complaint made to PPG of the age discrimination he suffered, and intimates he is cutting ties with recruiter Lyndon for that very reason, by stating: "Ron[,] I would be happy to review resumes [sent by you;] [a]re you aware we have an issue with one from the past that was not selected for an on site [sic] interview?" (2-ER-151:22–152:7, 229–30.) This was a clear reference to Robinson. All this critical evidence, and more, precluding summary judgment inexplicably was completely ignored by the lower court.

Accordingly, Robinson respectfully submits that the judgement below be reversed, and the matter remanded to state court.

## STATEMENT OF JURISDICTION

The district court issued its order denying Appellant's motion to remand to state court on October 17, 2019. (1-ER-36–44.) Following its

2

denial of Appellant's motion for continuance of the summary judgment motion proceedings to allow for discovery that Appellant contended was being thwarted by Appellee (1-ER-31-35), the court below thereafter rendered its December 9, 2021 order granting Appellee's motion for summary judgment; it entered a final judgment based on that order, in favor of PPG on December 10, 2021. (1-ER-2–28.) Appellant Robinson filed a timely notice of appeal thereafter on January 3, 2022. (15-ER-3110–41.) This Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTORY AUTHORITIES AND PERTINENT RULES

All relevant statutory authorities and pertinent rules appear in the Addendum to this brief.

## ISSUES PRESENTED FOR REVIEW

This appeal presents four overarching issues:

1) Should a summary judgment be reversed in a case in which the district court's conclusions regarding the absence of any genuine issue of material fact are not supported by all the evidence that was before the lower court?

2) Does a California district court commit reversible error when it denies Appellant plaintiff's motion to remand to state court in a case in which the record demonstrates that the "nerve center" of operations of the Appellee corporate defendant is in California notwithstanding formal incorporation out of state, there is a valid claim against non-

diverse defendant, and there is a failure to obtain evidentiary submissions after Appellant objects that amount in controversy is insufficient?

3) Did the trial court abuse its discretion in not granting Appellant's motion to continue [or deny] a motion for summary judgment to permit vital discovery needed by Appellant to oppose the motion and given the pattern of defense obstruction and noncompliance with discovery laws?

4) Did the trial court abuse its discretion in penalizing Appellant for Appellant's counsel's alleged noncompliance with local rules of court by denying Appellant's motion to continue the hearing on summary judgment which led to the dismissal of Appellant's action following the grant of summary judgment that followed, and in its overly punitive OSC rulings striking and disregarding Appellant's corrected opposing separate statement and late opposition papers, despite counsel's recounting of excusing medical extenuating circumstances, including the handling attorney's serious [heart] medical condition?

## STATEMENT OF THE CASE

### Factual and Procedural Background

***The Pleadings in State Court and The Notice of Removal.***

On March 8, 2019, Appellant filed his complaint in state court against PPG and against hiring manager David Sebold, for claims including a first cause of action for discrimination on the basis of age-refusal to hire, under California Govt. Code § 12940(a), a second for retaliation for protected conduct pursuant to § 12940(h), a third for harassment on the basis of age under § 12940(j), and a fourth cause of

4

action for failure to prevent discrimination, harassment, or retaliation pursuant to § 12940(m). (14-ER-3020–37.) Except for the claim for harassment, all causes of action were specifically alleged against PPG only. (14-ER-3025:3, 3026:26, 3029:3–14, 3030:25.) Appellant alleged that: "Defendant PPG maintained its Human Resources function for the Mojave PPG facility in the County of Los Angeles" and that "the Human Resources function in the Los Angeles County constituted the decision-making process of PPG policy and conveying to Defendant SEBOLD the PPG reasoning that the Plaintiff was too old to hire, as alleged below." (14-ER-3023:2–7.)

## Proceedings Below

### *The Appellant's Motion to Remand, the Opposition, and the Ruling of the District Court Denying the Motion.*

Appellee PPG filed a notice of removal based on federal diversity jurisdiction (15-ER- 3045–07) and, in response, on June 7, 2019, Appellant moved to remand the case to state court (14-ER-2997–3040), asserting that complete diversity does not exist because Appellant and PPG are citizens of California and PPG aerospace business's "nerve center" corporate office was located in Los Angeles County via the location of aerospace companies acquired by PPG in Southern California. (14-ER-2971, 3013:19–3014:8 ("internet search …revealed PPG acquired Courtaulds [predecessor in interest to PRC-DeSoto

International, Inc.] which was based in Glendale, California with a facility in Mojave, California (location where Plaintiff applied for position) in 2000….”). Appellee filed an opposition to the motion to remand on June 17, 2019 containing the declaration of Senior Counsel for Greg E. Gordon (“Gordon”) in which he asserted that PPG had several headquarters across the world, and “a substantial majority” of the corporate decisions “are all made at its headquarters.” (14-ER-2976–96.) Later on in the litigation, a PPG’s PMK deposition of Paula Holman would reveal this was not true.[1] Appellant filed his arguments in reply, including that Appellee could not carry its burden of proof on remand with such an ambiguous, conclusory declaration and Appellant also protested that there was an insufficient amount in controversy to support federal diversity jurisdiction. (14-ER-2969–75.) The district court on October 17, 2019 ruled in favor of PPG. (1-ER-36–44.)

## The First Defense Motion for Summary Judgment

On June 11, 2021 Appellee filed its first motion for summary judgment with a four-page declaration of defendant David Sebold (14-ER-2885–87), with a hearing date of July 19, 2021.

---

[1] A motion to supplement record is pending with the Court. “SR” will refer to exhibits 1-8 attached to the motion, including deposition excerpts.

(14-ER-2791–2903.) Appellant filed an ex parte application to continue the hearing on summary judgment and the date for opposition to motion and continuance of the discovery cut-off and other dates to complete certain noticed depositions (*Id.* at 2650–2789) which Appellee opposed (*Id.* at 2635–49), but which the court granted in part in a June 28, 2021 order. (13-ER-2631–34.)

In its application, Appellant recounted how Appellee did not produce defendant Sebold for deposition, in fact hid him, reneged on a stipulation to continue, provided limited discovery production to avoid deponent questioning in relation to key documents, and did not allow any questioning in regard to the summary judgment declaration of PMK Holman, thwarting Appellant securing essential discovery to use to oppose Appellee's motion. (13-ER-2653:3–16, 2672–73.)

Despite the readily apparent discovery misbehavior of Appellee and its finding that "Plaintiff submits evidence of attempting to take depositions as early as March 2021," the court saw a way to view an equivalence ("it appears both sides have engaged in unprofessional gamesmanship") and only provided minimal limited relief to Appellant, ordering: the "Percipient/Fact Discovery Cutoff" extended to August 2, 2021 rather than to August 20 as Appellant requested, the hearing on the MSJ continued to September 6, 2021 rather than to the date

requested of September 17, and then ordered that "if Defendant wishes, it may withdraw its MSJ **no later than August 2, 2021**, without prejudice to filing another MSJ." (12-ER-2632, 2669.)

### *The District Court's Erroneous and Gravely Prejudicial Denial of Appellant's Motion to Continue the September 13, 2021 Hearing on PPG's Motion for Summary Judgment.*

Due to insufficient time to address all the numerous outstanding discovery issues, on July 12, 2021 Robinson filed a motion to continue or deny Appellee's June 11, 2021 motion for summary judgment ("MSJ") (11-ER-2126–2309) with respect to which later Appellant, ultimately, would seek a "*minimum* of 120 days to allow Plaintiff to obtain documents requested months ago through the lengthy motion to compel process with sufficient time to complete the depositions of critical witnesses." (7-ER-1176.) Appellee filed a new second MSJ replacing the first one, on August 2, 2021 (8-ER-1364–1399), along with a "Revised Statement" of uncontroverted facts and conclusions of law in support of the motion. (8-ER-1400–1417). On August 3, 2021 the court proceeded to "apply Plaintiff's previously filed motion to continue…to PPG's second motion for summary judgment." (6-ER-1167.) Then, the court denied the motion to continue or deny despite Appellant's showing that vital discovery was needed to oppose the MSJ. (1-ER-31–35.)

***The District Court's August 2021 Order to Show Cause and
Related Rulings Including the Order Striking Corrected
Separate Statement, and the Denial of the Request to Strike
PPG's Non-compliant Reply Separate Statement.***

In August 2022 a deteriorating, serious heart condition struck the
associate attorney tasked with preparing the opposition separate
statement to the MSJ papers and came to a head, leading to
hospitalization and a major procedure. (2-ER-63–65.) Appellant's trial
counsel had the unfortunate and extraordinary misfortune of having its
lead associate assigned to assist opposing the separate statement
becoming gravely ill - at the critical time when MSJ opposition papers
were due, thereby leading to understandable 1 day to 2-day late
opposition filings. (2-ER-63–65, 68–80.) All the medical emergency and
related special circumstances, however, would be utterly disregarded by
the lower court in the end who inflicted not monetary, but, instead, the
near equivalent of terminating sanctions. (1-ER-12.)

On August 25, 2021 the district court discharged a July 30, 2021,
issued order to show cause, directed at Appellant's trial counsel
(1-ER-29) for filing a reply one day late and for filing an ex parte
application seeking leave to file the late reply ("prior OSC").
(8-ER-1491–92.) The OSC responses and supplemental briefing for
continuance ordered by the court were due during the same time
Appellant was to be working on opposing Appellee's MSJ. However,
after noticing Appellant's opposition was late, *sua sponte* the judge on

9

August 25, 2021 also extended PPG's deadline to reply to August 30, 2021, continued the hearing on the motion to September 20, 2021 and issued another order to show cause hearing (hereinafter "August 25, 2021 Order to Show Cause"), ordering Appellant to file by September 7, 2021 a response "in writing only, why the Opposition brief should not be stricken, or why counsel should not be sanctioned, for having filed the Opposition brief late." (1-ER-29–30.) Appellant had already filed in connection with the prior OSC his "Plaintiff's OSC Response" on August 16, 2021. (6-ER-1136–1160). On September 2, 2022, Appellant filed his "Plaintiff's OSC Response" as to why the opposition brief should not be stricken supported by a declaration of Francis X. Flynn, with supporting medical records, who recounted with documentation how he had suffered extreme illness during the relevant timelines. (2-ER-62–112.) A "Further OSC Response" was filed on September 3, 2021 supported by the declaration of David R. Denis with further exhibits. (2-ER-49–61.)

After the court *sua sponte* on September 7, 2021 vacated the scheduled September 13, 2021 hearing on the defense motion for summary judgment (2-ER-49) to take the matter under submission, the court then on December 9, 2021 ordered that it "**DISCHARGES** its August 25, 2021 Order to Show Cause." (1-ER-9.)

Despite its "discharge" of the August 25, 2021 Order to Show Cause, the court, nevertheless, proceeded to issue additional orders covered in

this OSC, including: an order "imposing consequences for missing deadlines" in the form of "Court disregard [of] the original Opposition (ECF No. 59), and the amended Opposition (ECF No. 60), as untimely." (1-ER-12.) In addition, the court on December 9, 2021 issued an order to strike "Robinson's Corrected Separate Statement" for violation of local rules, but the district court judge declined to "strike the Reply Separate Statement as violative of this Courtroom rules and provide PPG with an opportunity to file a compliant Reply Separate Statement[]…(Flynn Decl. ¶ 17 [2-ER-65]; Denis Decl. ¶ 30)," reasoning that "the litany of procedural failures on Robinson's counsel's part" somehow excused the need for the district court judge to even consider exercising its discretion regarding whether or not to exact a "striking of Reply" sanction upon Appellee's counsel for similarly being in state of violation of local Courtroom rules and the June 18, 2020 scheduling order. (1-ER-13; 2-ER-65.)

### *The Opposition to the Motion for Summary Judgment, the Facts Presented to the Trial Court Raising Genuine Issues of Fact, and the Decision Granting of Summary Judgment.*

In its August 2, 2021 motion PPG asserted that Robinson's causes of action for age discrimination, retaliation, harassment, and for failure to prevent discrimination, harassment, or retaliation alleged against PPG all failed because there was no genuine dispute as to any material fact.

11

(8-ER-1364–67.) In opposition to the motion, Appellant filed on August 20, 2021: a memorandum of points and authorities (6-ER-941–67), an opposition to Appellee's "Revised Statement of Uncontroverted Facts" (6-ER-968–1020), Robinson's evidentiary objections to declarations and evidence submitted in support of the defense motion (6-ER-1021–30), and the declaration of David R. Denis with attached exhibits (6-ER-1031–1135). One day later on August 21, 2021 appellate filed: a "corrected" memorandum of points and authorities in opposition to Appellee's motion for summary judgment [correcting citations to the separate statement] or, in the alternative, partial summary judgment (5-ER-647), and a "corrected" declaration of David R. Denis in support of Appellant's opposition (5-ER-678–939.) After the court moved the hearing on the motion for summary judgment to September 20, 2021 (4-ER-648) and the Appellee filed its reply on August 27, 2021 (4-ER-512–28), with a "Reply Statement of Uncontroverted Facts and Conclusions of Law" that Appellant later contended did not conform to local rules (4-ER-529–645; 2-ER-54–55,65), on September 1, 2021 Appellant filed "Plaintiff's [Corrected] Opposition" separate statement in response to "Defendant's Revised Statement of Uncontroverted Facts and Conclusions of Law" (2-ER-113–70), along with an "Amended Declaration of David R. Denis" with attached exhibits in opposition to the motion for summary judgment. (2-ER-171–316; 3-ER-319–510.)

In its moving papers PPG acknowledged that Robinson alleged and had evidence asserted was "direct evidence" of age discrimination; however, PPG counsel attempted to argue in its moving papers "around" that direct evidence offering an interpretation that offered a non-discriminatory intent or "innocent" motivation on the part of all PPG agents involved. (8-ER-1379:15–18.) At page 8 of its "Revised" statement of uncontroverted facts and conclusions of law ("Revised Statement") PPG, in effect, admits as uncontroverted fact that Lyndon communicated with "Plaintiff via email, [wherein] Lyndon wrote: `I spoke to the manager on Friday he is concerned about you being too senior for the role.' " (8-ER-1407:17–21.) In a manner similar to a comment, you are "too black" for the job but "I didn't mean color of skin but just was referring to "a dark interior disposition" Appellee in its Revised Statement, paragraphs 30 and 31 sought to make the factual contention, in effect: that PPG told Robinson, "you are too senior" for the job but "I didn't mean age" – I was only referring to "among other things" concern about Robinson's "apparent overqualification given his senior level management work experience and responsibilities" and there was no ulterior, discriminatory motive. (8-ER-1407:10–27.) Appellant contended that the "too senior" statement proved Sebold's intent to discriminate against Robinson because of his age, alone

indisputably creating a genuine issue of material fact "as to the actual motivation of PPG in denying Plaintiff an in-person interview and ultimate hire." (5-ER-656.)

In its order striking the corrected opposing separate statement and granting motion for summary judgment, the lower court made procedural rulings including striking or disregarding certain of Appellant's opposition filings, but the court held that its summary judgment in favor of PPG was supportable independent of those strike rulings, even considering Appellant's filings and evidence in its assessment of the pertinent law and facts. (1-ER-9:13–19.)

## SUMMARY OF THE ARGUMENT

In the present case the district court erred both in adjudicating the merits of the motion for summary judgment and via a series of procedural errors, beginning with the erroneous denial of Appellant's motion to remand the case back to state court. Appellant offered the lower court direct evidence of discriminatory motives in the form of statements made by Sebold and PPG agents, as corroborated in emails about Robinson and between PPG agent Lyndon, Sebold and Appellant. In anticipation of Appellant presenting this evidence in his opposition, Appellee itself presented and raised the issue in Appellee's motion for summary judgment papers, posing the question of Appellant's direct evidence and attempt to rebut it in advance. The district court erred in

not finding this direct evidence sufficient to obviate the need to conduct a *McDonnel Douglas* burden shifting analysis and in not finding the statements, emails and admissions precluded summary judgment. Appellant clearly established a prima facie case of age discrimination by presenting compelling evidence to establish the factors giving rise to a presumption of discrimination. Regardless of the district court's procedural ruling to "disregard" Appellant's 1–2 days late opposition papers, this Court can assess, *de novo*, the record on the direct evidence and reverse on that ground alone.

Extraordinary procedural errors furnish independent bases for reversal of the summary judgment. These include the utter failure of the lower court to grant Appellant's motion to continue the summary judgment proceedings to allow for vital discovery that was being thwarted by Appellee. Also, the court abused its discretion in its handling of an Order to Show Cause formally addressed to *counsel* alone in connection with Appellant's counsel's late filing of the opposition to the MSJ, in disregarding the opposition, and in striking a corrected Separate Statement while giving Appellee a pass when PPG was in noncompliance [and PPG had not disclosed the facts revealed by the PMK deponent].

Regarding the lower court's denial of Appellant's motion to remand, reversal is warranted because of deposition transcript evidence that came to light after that denial order and and to avoid a miscarriage of

justice. Appellee's PMK revealed facts confirming California was, in effect, the "nerve center" for PPG and linked to the aerospace operations in California. In a June 17, 2019 affidavit, PPG represented inaccurately that PPG maintains only three headquarters abroad, omitting to mention the Sylmar (CA) headquarters. This statement was directly contrary to what PPG said later via its PMK designate, Paula Holman. The district court's errors in adjudicating the issues pertaining to the minimum required jurisdictional amount in controversy, the fraudulent joinder claim as to Sebold, and the "nerve center" analysis, justify reversal.

There is now grave "doubt" that a true factual basis existed to support federal subject matter jurisdiction based on complete diversity. PPG owns the PPG Aerospace global business and PPG Aerospace's "nerve center" including HR operations remain at the PPG Aerospace headquarters in Sylmar, California.

## STANDARDS OF REVIEW

As stated in *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 (9th Cir. 1988), "[r]emoval of a case from state to federal court is a question of federal subject matter jurisdiction which is reviewed *de novo*." Similarly, the grant of summary judgment is reviewed *de novo*. *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989). An abuse of discretion standard applies as to review of the district court's denial of Appellant's

motion to continue a summary judgment hearing pending further discovery. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 892 (9th Cir. 2012). Similarly, the standard of abuse of discretion applies as to district court local rule violation and sanction rulings. *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988); *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 520, 522 (9th Cir. 1983).

## ARGUMENT

### I. GIVEN THE DIRECT EVIDENCE OF MOTIVE, THE DISTRICT COURT INCORRECTLY APPLIED THE *McDONNEL DOUGLAS* BURDEN SHIFTING TEST TO THIS AGE DISCRIMINATION CASE.

The district court judge disregarded direct evidence presented by Appellant and drew inferences in favor of the moving party to arrive at his decision to grant summary judgment. This *direct* evidence defeats summary judgment on the discrimination claim and renders the suit not suitable for summary judgment. *See, Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003)("When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created *even if the evidence is not substantial.*"). The district court had before it *direct evidence of motive* in light of proof of the fact that, on October 15, 2018, Appellant was told by PPG's recruiter and agent that David Sebold, *was concerned*

17

*Robinson was "too senior" for the position* (5-ER-707–12, 720–21.)
Despite this direct evidence linking the **discrimination animus** to
PPG's failure to interview and hire Appellant due to his age, however,
the district court erroneously followed Appellee's suggestion that the
court rely on the *McDonnell Douglas* burden shifting test to adjudicate
the present case and rule in Appellee's favor. The court also failed to
apply the rule that competing inferences create genuine disputes and
that, on summary judgment, a court must view the evidence in the light
most favorable to the non-moving party and draw any reasonable
inferences in the non-moving party's favor. *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 255 (1986); *see also, Adickes v. S.H. Kress & Co.*, 398
U.S. 144, 157 (1970); *Fresno Motors, LLC v. Mercedes Benz USA, LLC.*,
771 F.3d 1119, 1125 (9th Cir. 2014) (summary judgment improper
"where divergent ultimate inferences may reasonably be drawn from
the undisputed facts.").

   In *Nazir v. United States, Inc.* the court warned that "many
employment cases present issues of intent, and motive, … issues not
determinable on paper. *Such cases, we caution, are rarely appropriate
for disposition on summary judgment.*" *Nazir v. United Airlines, Inc.*,
178 Cal.App.4th 243, 286 (2009). The district court erred in discounting
Appellant's contention that Sebold called Robinson `too senior' in
speaking to PPG agent Lyndon who dealt directly with Robinson.
(1-ER-16:21.) In support of this conclusion and citing to *Trop v. Sony*

18

*Pictures Entm't Inc.*, 129 Cal.App.4th 1133, 1145 (2005) the court quoted the principle, that, "Direct evidence is evidence which proves a fact without inference or presumption." The lower court erred, however, in discounting the role and place of Lyndon. *See, Jorgensen v. Loyola Marymount Univ.*, 68 Cal.App.5th 882, 888 (2021) ("An influential adviser who makes a clearly biased comment generates relatively potent evidence" in a case of age and gender discrimination.) Lyndon certainly qualified as an influential advisor and "middleman" agent for PPG and for Sebold. Appellee contracted with Lyndon as its agent for most of its hiring needs. (2-ER-116:2–4.) *See, Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal.App.4th 1150, 1171–1172 (2016).

Secondly, the court erred in inappropriately "weighing the evidence" and adjudicating that Appellee's citation to Lyndon's deposition testimony, that "he could not remember whether Sebold used the phrase `too senior' or `overqualified'" was dispositive and meant "[t]he phrase `too senior' was Lyndon's, not Sebold's, and one must speculate to conclude that Sebold himself used this phrase." (1-ER-16–17.) When the basic facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. at 157. Here, Lyndon wrote the "too senior" phrase in emails to Robinson as confirming what Sebold told him and as the reason for the refusal to hire. The reasonable inference necessarily follows, that Lyndon would not put that phrase in

an email and attribute motive and statements to Sebold and PPG *in writing* unless PPG was in fact the source of that phrase. The rule also applies here that, direct evidence may take "the form of admissions by a supervisor or decision maker" that the adverse employment action, such as a refusal to hire, *was taken because* of the employee's membership in the protected class. *Trop*, 129 Cal.App.4th at 1147.

The email communications of the "too senior" slur comment confirm what happened (refusal to hire) and why. No inference is necessary" because "the offending comments cannot reasonably be interpreted as anything other than a reflection of bias—either racial or gender based," or ageism based. *See, Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994). The present case is analogous to *DeJung v. Superior Court*, 169 Cal.App.4th 533, 550 (2008) in which the court found that direct evidence of age discrimination where the employer expressly told plaintiff they would not hire him because they were "looking for someone younger" was sufficient to defeat a summary judgment motion on an age discrimination claim because the comments, made during the hiring process, showed discriminatory animus against older applicants without the need for an inference or presumption.

In its second ground for rejecting the direct evidence offered by Appellant the lower court drew, inappropriately, one inference in Appellee's favor, when that inference was debatable, claiming it was the only one to be drawn from an affidavit stating that "one of the hired

20

individuals" was "fifty-seven years old-only four years younger than
Robinson was when PPG chose not to hire him." (1-ER-18:1–11.)
According to the procedural law applicable, the Appellant was entitled
to the reasonable inference of this evidence in his favor, that,
nevertheless, he did suffer age discrimination and adverse employment
action, including not being granted an in-person interview as others
younger were and the retaliation for complaining about the "too senior"
comment. Inappropriately drawing every inference in Appellee's favor
in the course of interpreting the mental state and motivations of
Lyndon, the court gave a pro-defense reading to the "Lyndon Follow Up
Email" when a contrary inference could be drawn in Appellant's favor.
(1-ER-17.) This clearly ran afoul of the fundamental principle that
summary adjudication is inappropriate, in cases in which the evidence
is such that it could cause reasonable persons to disagree. *Aydin Corp.*
*v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

Appellant also presented to the district court direct evidence that
PPG illegally requires the age, citizenship and birth country (national
origin) of its potential applicants. There is an e-mail from Talitha
Mauldin which states: "Ron – Please send me the candidates full name,
DOB, citizenship and birth country." (2-ER-159:7, 231–32;
5-ER-737–38.) Appellee argued that Appellant never made a complaint
to PPG, but Appellant refuted this by presenting admissible evidence of
an email from David Sebold to Ron Lyndon acknowledging Plaintiff's

21

complaint to PPG of the age discrimination and impeaching both Sebold and H.R. manager, Dean Arnold, creating disputed material facts. It states: "Ron [,] I would be happy to review resumes. Are you aware we have an issue with one from the past that was not selected for an onsite (*sic.*) interview?" (2-ER-151:22, 229–30; 5-ER-735–36.)

Hence, Appellant presented *direct evidence of proving that PPG's age-bias animus and complaint significantly negatively affected the prospects for Appellant's* **selection for an on-site interview** *and ultimate hiring.* Appellant produced substantial, overriding direct evidence of Sebold's discriminatory and retaliatory motive and intent manifesting over a series of days of conversations, complaints and e-mails between David Sebold, Ron Lyndon, Dean Arnold and Appellant, that Sebold had concerns Appellant was "too senior" and wanted to "talk to the HR Manager before moving forward." This conversation and email exchange is direct evidence of PPG's age-biased animus and retaliation against Appellant and older applicants, with the qualifications and experience, and violates appellee's own policies for criteria in setting an applicant for an in-person interview. The fact that Lyndon said, "PPG did decide you were too senior" and Sebold specifically referred to Plaintiff as "too senior" while setting in-person interviews with other candidates with similar qualifications confirms

that there is a causal link between his comment and Plaintiff's failure to receive even an in-person interview. The statement proves Sebold's intent to discriminate against Plaintiff because of his age.

Further, "under the established case law, [a plaintiff] need not demonstrate that every individual who participated in the [employment decision] shared discriminatory animus in order to defeat summary judgment. *Morgan*, 88 Cal.App.4th at 73–74. Showing that a significant participant in an employment decision exhibited discriminatory animus suffices to raise an inference that the employment decision was discriminatory. *DeJung v. Superior Court*, 169 Cal.App.4th 523, 551 (2008). This legal principle has been referred to as the "cat's paw" doctrine. California has adopted the "cat's paw" principle. *Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95, 114–116 (2004).

Sebold played a critical role in the reviewing of resumes, interviewing, setting of in-person interviews and selection process. Accordingly, *this direct evidence proffered by the e-mails alone indisputably creates a triable issue as to the actual motivation of PPG* in denying Robinson an in-person interview and ultimate hire. The district court erred in granting PPG's summary judgment motion as to Appellant's age discrimination claim.

23

## II. THE DISTRICT COURT INCORRECTLY APPLIED THE EVIDENCE BEFORE IT; EVEN A PROPER *McDONNEL DOUGLAS* BURDEN SHIFTING TEST ANALYSIS WARRANTED DENIAL OF THE MOTION FOR SUMMARY JUDGMENT.

Even if Appellant is deemed not to have provided direct evidence that PPG's refusal to hire him was based on discriminatory motives, summary judgment was improperly granted because Appellant raised genuine issues of material fact on the issue of pretext. Even under *McDonnell Douglas* analysis, the circumstantial evidence before the court justified denial of the motion. In employment discrimination cases brought under the *McDonnell Douglas* framework, courts "require very little evidence to survive summary judgment." *Sischo–Nownejad v. Merced Comty. Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991). When ruling on a motion for summary judgment, the court does not weigh the evidence or inferences; "if the inference of improper motive *can* be drawn, there must be a trial." *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990).

Under *McDonnell Douglas*, (1) plaintiff must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for the adverse employment action; and (3) the complainant must prove that this reason was a pretext to mask an illegal motive. *See, DeJung*, 169 Cal.App.4th at 552. The *McDonnell Douglas* test "allows discrimination to be inferred from facts that create a reasonable

likelihood of bias and are not satisfactorily explained." *Guz v. Bechtel Nat. Ins.*, 24 Cal.4th 317, 354 (2000). An employee may demonstrate such a chain of inferences "through a 'convincing mosaic of circumstantial evidence' that would permit a jury to infer unlawful [discrimination] retaliation on the part of the employer." *Anderson v. Donahue*, 699 F.3d 989, 996 (2012). Often, this "convincing mosaic of circumstantial evidence" includes "suspicious timing, ambiguous statements (oral or written) and other 'bits and pieces' from which an inference of discriminatory intent might be drawn,' as well as "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.*

## A. Robinson Did Have Relevant Experience.

Appellant established his prima facie case of age discrimination. The plaintiff in a failure-to-hire case generally must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought, (3) he suffered an adverse employment action, such as denial of an available job, and (4) some other circumstance suggests discriminatory motive. *Abed v. Western Dental Servs., Inc.*, 23 Cal.App.5th 726, 736 (2018). Here Appellant satisfies all of the elements of a prima facie case for age discrimination and failure to hire because: Robinson was over 40 (actually over 60 years old) (2-ER-135:6), he did not receive an in-person interview, and PPG continued screening

25

and interviewing applicants for the position with similar qualifications after learning of Robinson's age. (2-ER-122:14, 146–48, 149:1–20, 149:26–150:19). The district court erred when it held that "PPG meets its burden of proffering a legitimate, nondiscriminatory reason for not hiring Robinson" and "Robinson fails" to "present substantial evidence showing the reason to be a pretext for discrimination." (1-ER-21.)

The court's first error was holding that PPG was *not* required to offer a legitimate business reason for why, contrary to PPG's "own internal policies" Appellee allowed some applicants "to make it to a certain stage in the interview process," but not Robinson, who was demonstrably "more qualified than those candidates" when the PPG's own "internal policies" dictated his "advancing" to an in-person interview. (1-ER-19.) The court declared there was no "adverse employment action" involved in reference to "candidates that PPG invited for an in-person interview or otherwise advanced in the interview or otherwise advanced in the interview process but did not ultimately hire; hence, "[a]ll it [PPG] needs to do is show that it had a legitimate business reason for not hiring Robinson." (*Id*.) In support of its reasoning the court cited to *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1036 (2005), but it misapplied it in an overly narrow manner the *Yanowitz* court's rule and rationale that "an adverse employment action" is one that " materially affect[s] the terms and conditions of employment."

In its opinion in *Yanowitz,* the California Supreme Court made sure
to caution against any narrow reading of its stated definition of an
adverse employment action sufficient to support a claim of
discrimination. *See*, *Yanowitz*, 36 Cal.4th at 1052 (citing *Harris v.
Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993). The *Yanowitz* court,
following *Harris*, held that the language of California Government Code
section 12940(a), "properly must be interpreted broadly to further the
fundamental antidiscrimination purposes of FEHA" in a similar
manner. *Id.* at 1053–54 ("[T]his provision protects an employee against
unlawful discrimination with respect *not only* to so-called `ultimate
employment actions' such as termination or demotion [or refusal to
hire], but also the *entire* spectrum of employment actions that are
reasonably likely to adversely and materially affect an employee's job
performance *or opportunity for advancement in his or her career*
(emphasis added).").

The district court needed to include "the *entire* spectrum of
employment actions" of PPG that were "reasonably likely to adversely
and materially affect" Robinson's opportunity for advancement in his
career – that is, the discriminatory act of PPG depriving Robinson of the
opportunity to have an in-person interview. PPG failed to carry its
burden. With respect to the establishment of "a legitimate business

reason for not hiring Robinson," PPG also failed in that burden and Appellant carried his burden successfully, given the evidence submitted.

The court discounted "the deposition testimony [Robinson] cites" in his opposition to raise a genuine issue; the court reasoned, because it "does not support the proposition that he had experience with the process manufacturing of coatings and sealants—a process which he would be responsible for supervising… [Appellant's] Ex. 26." (1-ER-20.) However, a review of exhibit 26 (2-ER-275–293), reveals a misreading by the court of the deposition testimony such that the court erred in failing to find that Appellant's exhibit 26 in fact *did* raise a genuine issue as to this question of fact. The court did not understand the relationship of "sealants" and constituent compounds.

Sealant compounds are made from a variety of materials, including resins. Per the deposition testimony (exhibit 26) Sebold talked to Robinson "about the resins they were using" in PPG's process for manufacturing coatings and sealants (2-ER-284:22–25), Sebold described a manufacturing process at PPG "very similar to what I [Robinson] was doing at Milgard Window and Doors" which involved "working with resins" (2-ER-285:1–3, 285:24–286:10), and Robinson responding to the question of what manufacturing "process you were doing at Milgard" by answering that it involved: "[A] mixing area, where we had the resins and chemicals that all went into it," and that it

involved "acetone, or the specific chemical we brought in" and "all those things are similar to what he [Sebold] was describing to me [as the manufacturing process at PPG]." (2-ER-286:13:11–22.) The deposition excerpts that the district court discounted (at "Ex. 26:46:6–24") clearly confirmed Appellant's experience in the process of manufacturing sealants and coatings at Milgard Window and Doors. However, the court erroneously fixated on the one line in the deposition excerpt referencing that Appellant "did not work" with "Exxon Mobile" "in their manufacturing area," but he did "work with them in the development of some of the coatings." (2-ER-287.) The district court gave a flagrantly pro-defense interpretation to this text which led to wrong conclusion that Robinson was "not qualified," rather than finding a genuine issue of material fact was raised by Appellant's evidence.

In their moving papers Appellee only challenged the second element, "qualified for the position" (2-ER-136:24–137:26, 181–88.) Robinson more than met the minimum qualifications of the job. (2-ER-138, 140:5–12.) Although the job description did not require experience with manufacturing coating and sealants, Robinson did have that experience. (2-ER-140:18–24.) Other candidates who received in-person interviews, did not have experience in coating and sealants, certainly not in aerospace. (2-ER-193–200.) Appellee recruited candidates that had similar production manager experience without sealant and coating experience. (2-ER-145:21–146:6) and younger candidates without

29

coating and sealant experience. (2-ER-145:4–9.) PPG set up in-person interviews with candidates that did not have coating and sealant experience where Robinson did. (2-ER-193–200.)

## B. Robinson Scored Well On Sebold's Subjective Phone Grading and Discovery Thwarted by Appellee.

Appellant scored well on Sebold's subjective phone grading. Robinson did very well in the areas that were in the job description, receiving a B+ in Safety, and B+ in Communication. Plaintiff also received a B- on "Focus on Results," which was not included as a requirement on the job description. (2-ER-142:14–19.) However, in discovery Appellee failed to produce the records of Sebold's interview sheets of the other candidate's scores. (2-ER-142:20–26.) Appellee did not disclose that information and the inference goes against Appellee on appeal and Appellee's weaker evidence must be distrusted. (2-ER-142–143.) Cal. Evid. Code § 412. The grant of summary judgment can even be reversed on this ground alone because the lower court's refusal to compel discovery responses or to continue the MSJ to allow for issuance of an order to compel compliance with the magistrate's discovery order. *See*, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84–85 (2d Cir. 1990) (appellate court vacated district court's summary judgment on discriminatory discharge because district court's refusal to compel answers, including but not limited to "me too" evidence, from Appellee defendant deprived

Appellant of "evidence potentially helpful to his attempt to assemble such a quantum of circumstantial evidence supporting his argument of pretext.". After hamstringing Appellant by denying his motion to continue hearing to allow more discovery to elicit documents and conduct depositions on MSJ declarants who Appellee declined to produce for second session depositions , the district court confirmed how vital and effective such discovery would have been in opposing the motion by stating that, Robinson did not carry its burden because: "[h]ere, …Robinson points out isolated incidents and facts that only weakly suggest the hired candidates were unqualified or that he was more qualified." (1-ER-21:16–22.)

### C. Robinson Was Not Overqualified For The Position and Appellee's "Legitimate, Non-Discriminatory" Reasons Fail.

The other basis given by the lower court for finding PPG carried its burden to show "a legitimate business reason not to have hired Robinson," was based on Sebold's self-serving declaration that "PPG was interested in hiring a candidate who would stay content in the role" and "Sebold was concerned that Robinson would find the role unfulfilling and would seek to promote out of the position or find another job".

Appellee relied on *Equal Emp.'t Opportunity Comm'n v. Ins. Co. of North Am. (Ins. Co.)*, 49 F.3d 1418 (9th Cir. 1995). However, in that case, the Ninth Circuit merely declined to adopt the Second Circuit's suggestion "that rejection of an older worker because he or she is 'overqualified' is always tantamount to age discrimination[.]" *Id.* at 1421.

The standard set out by the Ninth Circuit in *Ins. Co.* required a showing of objective rather than subjective concerns. Here, one of the concerns alleged by Sebold was the subjective concern that Appellant would be "dissatisfied with the role" since he was previously in a "higher level." However, PPG was recruiting other candidates with similar senior level experience. (2-ER-145:21–146:6.) The rule and rationale in *Ins. Co.* warranted rejection of Appellee's proposed pretextual reason for refusing to hire Appellant.

Further, Appellant demonstrated evidence that Appellant wanted the Mojave, California position precisely because he had family in the area and was looking for opportunities in the area. (2-ER-136:8–23.) In that regard, Appellant's showing renders his case materially indistinguishable to *Taggart v. Time Inc.*, 924 F.2d 43 (2d Cir. 1991). In that case, the defendant refused to hire the plaintiff because it thought he was overqualified. *Id.* at 47. Because of his over-qualification, the defendant stated it "did not think the position would interest or challenge [the plaintiff]." *Id.* However, the plaintiff "stated he was

willing to take any job available simply to continue to earn a decent living[.]" *Id.* In light of those circumstances, the court found "that the reason proffered was pretextual and unworthy of credence." *Id.* at 48. That reasoning applies with equal force to the circumstances presented in this case, given that Appellee was shown to be aware that Appellant wished to be with family in the area and was seeking employment in the area. Appellant successfully raised a genuine issue of material fact as to PPG's proffered reason for its decision.

If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *See*, *Reeves v. MV Transp., Inc.*, 186 Cal.App.4th 666, 674–675 (2010). The decision of PPG raised a genuine issue precluding summary adjudication.

Another defect in the decision below was the district court's discounting as material the Appellant's factual showing that there was a third PPG position, for Distribution Supervisor, and that that position was not offered or disclosed to Appellant but to another younger applicant in his 30s, Edgar Garcia. (2-ER-141:10–15.) Employers who lie about the existence of open positions are not immune from liability

under the FEHA simply because they are effective in keeping protected persons from applying. *Abed*, 23 Cal.App.5th at 741. Demonstrative of its tendency to erroneously "weigh the evidence" in its evaluation of the motion for summary judgment, the district court began its *"Circumstantial Evidence/Burden Shifting Analysis"* by disregarding the Appellant's "**ADDITIONAL MATERIAL FACTS**" ("AMF") number 83 and the genuine dispute regarding that issue reasoning: "Nothing credible in the record suggests PPG was hiding any job opportunities from Robinson" and, "[i]nstead, the record indicates that, if anything, it would fall to Lyndon" to be responsible to be aware and forward the "opportunities at PPG…to Robinson." (1-ER-18:20–27.) Patently, the court erred in making a credibility determination of this kind, applying all reasonable inferences in Appellant's favor.

It is established that lower courts in adjudicating a motion for summary judgment are not empowered to make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *See*, *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991); *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Divergent ultimate inferences could "reasonably be drawn from the undisputed facts" of the existence of a third position for Distribution Supervisor, such that inference can be drawn that Sebold knew but chose not to communicate PPG's third

34

position opportunity to Lyndon or Robinson, who was qualified for the position, effectively concealing it from Robinson. In cases involving divergent ultimate inferences pertaining to an additional material fact, summary judgment is improper. *See, Fresno Motors, LLC v. Mercedes Benz USA, LLC.*, 771 F.3d at 1125. Here, the court inappropriately chose Appellee's view of the evidence instead of finding a genuine issue of material fact warranted by the record before it.

## D. Circumstantial Evidence as to PPG's Shifting Explanations for Not Interviewing Appellant.

The district court erred in failing to find an inference of discrimination based on PPG's shifting reasons for failing to hire him. (1-ER-22.) Here, there was indisputable circumstantial evidence as to PPG's shifting of explanations for PPG not interviewing Appellant which the district court failed to take into account. PPG initially claimed that Appellant would be dissatisfied with the role because he was previously in a "higher level." Then, Appellee claimed that Robinson did not have the experience in sealant and coatings (which was proven to be a false statement) and then, later, none in aerospace. Finally, Appellee claimed that Robinson was overqualified. Yet, Appellee recruited less experience and less qualified individuals. Evidence that the employer's stated reason for termination is false permits an inference that the false explanation was a pretext to cover-

up improper motives at play. *Mamou v. Trendwest Resorts, Inc.*, 165 Cal.App.4th 686, 715 (2008); A plaintiff can prove pretext either: indirectly, by showing the employer's proffered explanation is "unworthy of credence" (because it is internally inconsistent or otherwise unbelievable); or directly, by showing that unlawful discrimination more likely motivated the employer. *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003).

### E. Robinson Stated a Prima Facie Cause of Action for Retaliation.

In order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. *Yanowitz*, 36 Cal.4th at 1042. The relevant question is not whether a formal accusation of discrimination is made by an employee but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner. *Husman v. Toyota Motor Credit Corp.*, 12 Cal.App.5th 1168, 1193 (2017). All the above elements were met in this case, thereby precluding summary judgment. After the interview with the comments by Sebold of about "looking for younger people to develop into the role" and Sebold

trying to ascertain the age of Appellant throughout the interview
(2-ER-281–82) and the resulting comment of concern that Robinson was
"too senior," Appellant complained on October 15, 2018 of the
discrimination to Ron Lyndon. (2-ER-201–04; 5-ER-707–10.) Appellant
also complained over the phone and via e-mail. (2-ER-146–47), to wit, "I
believe being too senior is the battle I am having everywhere I
interview[;] … [i]f they are looking for someone who will be around for
20 years, I am not that guy," and "I know my age is playing against
me," obviously showing exasperated concern in the tone. (2-ER-202). Of
note is a lack of a response by PPG in response to these comments by
Appellant, clarifying that by "too senior", PPG meant something
entirely different as opposed to "age".

The district court chose to view the evidence in a manner most
favorable to Appellee, concluding that, "[a] factfinder could not view
Robinson's email and reasonably conclude that it constitutes either a
complaint or an opposition to PPG's violation of FEHA." (1-ER-24.)
Without an apparent justification the court chose to disbelieve the
evidence that Appellant, communicating with middleman PPG agent
Lyndon, also complained via phone and via e-mail (2-ER-146–47), the
court gave no inferences in favor of Appellant in connection with the
obvious concern already weighing on Appellant's mind from the time of
the interview, corroborating circumstances leading Appellant to
complain later, given the comments by Sebold about looking for younger

people to develop into the role and his trying to ascertain the age of Appellant throughout the interview, and Appellant, "I think he was trying to figure out my age" (2-ER-281:24–282:21.) Rather, and again, the evidence was read in favor of Appellee's position.

Causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). Appellant was told that the manager was going to talk to HR. (2-ER-201–04; 5-ER-707–10); immediately thereafter, Appellant was told that PPG decided that he was "too senior". This time sequence is undisputed. Appellant, therefore, succeeded in establishing "by an inference derived from circumstantial evidence," the requisite "causal link." *See*, *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 615 (1989).

Appellee denied they knew of Appellant's complaint; however, Robinson produced an e-mail that Sebold acknowledged learning of Appellant's complaint. (2-ER-151:22–152:7.) The email read: "Ron[,] I would be happy to review resumes [sent by you;] [a]re you aware we have an issue with one from the past that was not selected for an on site [sic] interview?" (2-ER-151:22–152:7, 229–30.) After showing Lyndon the e-mail, PPG stopped using Ron Lyndon's candidates, selected internal candidates, and selected ones that were substantially younger and less qualified. As stated in *Yanowitz*, 36 Cal.4th at 1052:

"Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context." The court needed to "take into account the *unique circumstances of the affected employee as well as the workplace context of the claim*" in assessing whether actionable conduct occurred. Here, the lower court below inappropriately invaded the province of the jury and weighed and determined facts.

PPG retaliation was demonstrated by how PPG also stopped using Ron Lyndon's services, the candidates completely, shortly after the complaint was made by Appellant, and this was acknowledged by Sebold. Similarly, PPG knew of Robinson's complaint, falsely denied knowledge of the complaint, did not investigate, and also knew that Robinson had applied in their facility in Ohio where he also was denied employment there, because of his earlier complaint. As the court stated in *McCoy v. Pac. Mar. Assn.*, 216 Cal.App.4th 283, 299 (2013), "[a]ctions for retaliation are 'inherently fact-driven'; it is the jury, not the court, that is charged with determining the facts.".

This case is analogous to *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) in which the court reversed a grant of summary judgment in defendant's favor on a retaliation claim. The court held that a plaintiff, in order to show "his protected conduct was `the substantial' or `motivating' factor behind defendant's conduct' " and thereby overcome a motion for summary judgment, plaintiff "need only `put forth evidence

of retaliatory motive, that, *taken in the light most favorable to him*, presents a genuine issue of material fact as to [the defendant]'s intent`"). That showing was made to the district court by means of the evidence cited above and proffered in Appellant's additional material facts and supporting evidence. The district court erred in granting the motion in disregard of this evidence.

The lower court's grant of summary judgment as to the third cause of action against PPG for harassment was error, given the evidence, disputed issues of fact and controlling law. The district court contended that the very same basis that supported dismissal of Sebold from the harassment claim supported dismissal of the harassment claim against PPG. (1-ER-26.) Therefore, Appellant will address these issues jointly below in the next sections of this brief.

### F.  Genuine Issues Of Material Fact Defeat Defendant's Summary Judgment As To Plaintiff's Claim For Failure To Prevent and Punitive Damages.

Appellee contended below that Appellant's derivative failure to prevent claim fails because Appellant's claims for discrimination based on FEHA fail as a matter of law. The lower court also failed to adjudicate the issue of punitive damages finding the issue to be moot. This was clear error, as Appellee had been shown to have hidden the fact that Appellant complained and Appellee never investigated his

complaint. This demonstrates genuine issues of fact exist as to the claim of failure to prevent. *Trujillo v. North Cnty. Transit Dist.*, 63 Cal.App.4th 280, 289 (1998). Moreover, as to the punitive damages, there are triable issues on PPG managers/agents had policy making authority such that they qualified as "managing agents" under the decision in *White v. Ultramar, Inc.*, 21 Cal.4th 563, 567 (1999) (holding that whether a manager is a managing agent is a fact-specific inquiry, often incapable of summary adjudication; "[t]he scope of a corporate employee's discretion and authority under our test is therefore a question of fact for decision on a case-by-case basis.").

## III. THE DISTRICT COURT HAD NO JURISDICTIONAL AUTHORITY TO ENTER JUDGMENT AND THE ORDER DENYING APPELLANT'S MOTION TO REMAND BACK TO THE STATE COURT SHOULD BE REVERSED.

A defendant may remove an action to federal court pursuant to 28 U.S.C. § 1441(a) if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b). In the present case, appellee PPG misled the court with an ambiguous declaration touting Pittsburgh as the center of its PPG aerospace operations in California. The truth was otherwise and known to PPG as later revealed by their own designee deponent and PMK Paula Holman who stated under oath: "The corporate headquarters is in Sylmar, California." (SR, Exh. 1, deposition

page 44:6–10.) Based on this effective admission of PPG, and corroborating evidence (see SR, Exhs. 2 thru 8) the order denying Plaintiff's motion to remand should be reversed, the matter remanded to state court, and the summary judgment in this case set aside.

Another error was the court's determination that no cause of action was stated as to defendant Sebold, a party resident of California. Joinder is fraudulent " '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' " *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Courts reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Grancare, LLC. v. Thrower by & Through Mills*, 889 F.3d 543, 550 (9th Cir. 2018). Appellee, whose burden it is to establish removal jurisdiction (*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004), amended by 387 F.3d 966 (9th Cir. 2004)), did *not* establish that the Appellant's complaint "obviously" fails to state a cause of action for harassment against resident defendant David Sebold nor that there is no "'possibility'" that a California court "'would find that the complaint states a cause of action against' " Sebold. *See*, *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).

The district court stated a first primary ground for dismissing Sebold for fraudulent joinder that, as a result of Appellant's "Scrivener's error" pleading deficiency, "the Complaint fails to name Sebold as a defendant

in the four causes of action," including "the third cause of action of harassment" which in the "heading" is "erroneously asserted against PPG and Does 1–10." This faulty reasoning runs directly contrary to this Court's statement of the law in *Grancare, LLC*, 889 F.3d at 549, that "the district court must consider ... whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend" and arguments that "go to the sufficiency of the complaint" as in pointing out a failure to plead "claims with sufficient particularity or other "inadequate" pleading deficiencies do not establish fraudulent joinder. *See*, *id.* at 549, 552. The decision also impermissibly ignores the "settled rules" that would apply in a California state court which would have disregarded the purported "Scrivener's error" pleading deficiency or readily granted leave to amend at the pleading stage. *Steiner v. Rowley*, 35 Cal.2d 713, 719 (1950); *Gananian v. Wagstafhe*, 199 Cal.App.4th 1532, 1539 (2011) ("`Mistaken labels and confusion of legal theory are not fatal; if [the] complaint states a cause of action on any theory.... [Citations.] [the] action cannot be defeated merely because it is not properly named`"); *see also*, Cal. Civ. Proc. Code § 452 ("In the construction of a pleading …its allegations must be liberally construed, with a view to substantial justice between the parties").

Based on the above pleading rules, the district court erred in its decision based on a purported error in mislabeling in the third cause of action. In support of the third cause of action for harassment, aimed at

Sebold, Appellant alleged that: "Defendant PPG and Sebold harassed Plaintiff by engaging in harassing conduct that resulted in the denial of the position for which Plaintiff applied with PPG. (14-ER-3029:13–15.) Moreover, the complaint charged Sebold that his conduct, "[d]isqualifying Plaintiff on the basis that he was `too senior' and republishing that criteria to Plaintiff through PPG's agent who was authorized to be, and known to be in communication with Plaintiff constituted discriminatory harassment." (14-ER-2029.) The complaint contained a caption page that clearly named Sebold as a party defendant and referenced Sebold through the complaint and most specifically at paragraph 50, delineating the acts of harassment, naming him as the culprit in connection with the harassment claim. (14-ER-3020, 3023-24, 3029.) That was sufficient under the settled rules of California.

The second ground given for the district court's decision is that, otherwise, "*Robinson fails* to establish that Sebold can be held liable for harassment (emphasis added)." (1-ER-42.) The district court's *own words* make readily evident on appeal that the judge applied the wrong standard and erred. The *correct* standard the district court should have applied would have been: *PPG* carried its burden of proving that there is *no* "`possibility`" that a California court "`would find that the

44

complaint states a cause of action against'" Sebold. *See*, *Hunter*, 582 F.3d at 1046. On its application of the law of harassment liability the court was wrong as well.

The district court's specified secondary ground for no harassment claim liability was premised on its reading of *Janken v. GM Hughes Elec.*, 46 Cal.App.4th 55, 63 (1996), stating there was no cause of action for harassment against Sebold because, "[h]ere, the allegations of Sebold choosing not to hire Robinson is a management action" and "[d]eciding who not to hire is the kind of action that is necessary to business and personnel management so these are inactionable. (1-ER-43.) However, the lower court made a fundamental misstatement of California law. Specifically, in *Roby v. McKesson Corp.*, 47 Cal.4th 686, 707–708 (2010), the California Supreme Court specifically evaluated and rejected the argument that "personnel management" actions could not support a cause of action for harassment. The Supreme Court held that, "[a]lthough discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with regard to proof." *Id.* at 707 (emphasis added).

The *Roby* decision is crucial in this case as well as the rule stated in *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 870 (1977), that a court may not find that there is a failure to state a cause of action when the necessary facts are shown to exist, even when those facts are stated

ambiguously or by necessary implication. Appellant properly alleged that, Sebold and PPG management used their positions of power to harass, target and punish Appellant for the "crime" of being "too senior", a harassing statement (among others) directed to an older applicant. Hence, the court erred in adopting the Appellee's theory that third claim for relief fails on the ground the alleged harassment constituted official employment actions. This error in reasoning in dismissing Sebold during the course of adjudicating the Appellant's motion for remand is an error that also warrants reversal of the grant of summary judgment on the claim of harassment against PPG, where the court followed the same reasoning. (See below discussion of that issue.)

The implication of the district's reasoning and result is that, the employer and supervisor could always "win" by merely asserting that the claimed "harassment" behavior cannot be distinguished from the act of "refusal to hire" the plaintiff "applicant" because this is deemed "necessary to business and personnel management" and can never constitute harassment under *Janken*. The California Legislature obviously intended a different result. Moreover, the "too senior" slur was offensive like the communication of the remark, you are "too black" would be offensive and indisputably constitute harassment in similar circumstances. Here, supervisor Sebold knowingly hurt Robinson with the "too senior" comment just like a person of color would be deeply hurt with the "too black" comment.

Regarding the harassment claim alleged against appellee PPG and summarily adjudicated in PPG's favor, the above analysis as to Sebold applies equally to the claim of Appellant against PPG. Because the district court made clear it applied the same reasoning used in dismissing Sebold in justifying its grant of summary judgment in favor of PPG (1-ER-26:3-6), the defects in that reasoning discussed earlier in this brief, warrant reversal of the summary judgment decision as to PPG on the claim of harassment. The lower court misapprehended what the claim alleged was, by inaccurately stating that, "Sebold's actions in not hiring Robinson were the only basis for harassment Robinson alleged." (1-ER-262-4.) The court seemed to have missed or ignored that there were clearly allegations, bringing this case within the holding of *Roby v. McKesson Corp.*, 47 Cal.4th 686, 707–708 (2010), regarding communmication of hostile messages relayed from PPG to appellant that were deeply hurtful and constituted harassment. (See 14-ER-2029 ("and republishing that criteria to Plaintiff through PPG's agent who was authorized to be, and known to be in communication with Plaintiff.").)

*Roby* specifically recognized that "harassment is generally concerned with the *message* conveyed to an employee." *Roby*, 47 Cal.4th at 708 (emphasis in original). Hence, the High Court reasoned, "some official employment actions done in furtherance of a supervisor's managerial role can ... have a secondary effect of communicating a hostile message."

47

*Id.* at 709. The denial of Appellee's motion for summary judgment was also warranted by the rule and rational stated in *Dee v. Vintage Petroleum, Inc.*, 106 Cal.App.4th 30 (2003). The Court of Appeal held in relevant part, "In many cases, a single offensive act by a co-employee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a *supervisor*, *the result may be different*." *Id.* at 35–36 (emphasis added).) *Dee* is particularly applicable here, because the harassing conduct came, as here in the case of Sebold, from a high-ranking company official who was a supervisor and manager for the employer. Appellant also sufficiently raised genuine issues as to his claim of harassment against PPG particularly given that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Juell v. Forest Pharm., Inc.*, 456 F.Supp. 1141, 1158 (E.D.Cal. 2006). Finally, appellee's failure to investigate appellant's harassment complaint, itself, dictated denial of a motion for summary judgment. *See, Dawson v. Entek Intern.*, 630 F.3d 928, 940 (9th Cir. 2011) (reversing District Court's order granting employer's summary judgment on harassment claim).

Another ground for reversal of the motion to remand denial order pertains to the court's failure to find sufficient "doubt" as to the appellee's claim that no central headquarters as to PPG Aerospace operations was located in California, even without considering the

48

deposition excerpts of the PMK and webpages of PPG showing the corporate headquarters are in Sylmar, California. *See*, *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)(federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance). The district court had before it a record of facts which made removal improper, given appellant's ample showing that, appellee's submissions did not suffice and were ambiguous and insufficient to support federal diversity jurisdiction. In opposing Appellant's motion to remand PPG argued that PPG's headquarters as it related to their aerospace operations in California are located in Pittsburg, Pennsylvania; however, appellee's submissions in support of removal merely offered unsupported conclusions which, necessarily, were insufficient to enable defense to carry its burden.

The central question is whether PPG's principal place of business and "nerve center" in relation to the PPG aerospace operations in California with which appellant came in contact as an FEHA "applicant" was, in fact, in Southern California. While concealing the Sylmar headquarters, Appellee submitted a conclusory declaration in support of PPG's position that its "global" headquarters is its one U.S. headquarters in Pittsburg, citing *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010), for the proposition that California was not the location of PPG aerospace California operations's "nerve center." However, Appellee never met the guidelines for determining the

49

location of the nerve center set forth in *Hertz,* and a corporation's "nerve center" is not always the place listed as a company's headquarters. As the party invoking jurisdiction PPG had the burden of proving the location of the corporation's nerve center. *Id.* at 96–97; *Harris v. Rand, 682 F.3d 846, 851 (9th Cir. 2012).* Appellee's declaration submissions in opposition to the motion to remand did not include annual reports or other documents showing where the corporate business activities are directed, including product development, exporting, marketing, production, research, service and other factors. *See, Hertz Corp. v. Friend,* at 96–97. Appellee's submission consisted, instead, on a two-page, internally inconsistent and vague declaration of Greg E. Gordon, "Senior Counsel, Corporate Law with PPG Industries, Inc." with not one exhibit.

Paragraph 4 of Gordon declaration, which purports to refute Appellant complaint allegation of a Southern California "nerve center" (14-ER-3023:2–7), fails to do so. PPG via Gordon avers that there are many "headquarters" ("[a]lthough PPG maintains headquarters in Hong Kong, Switzerland…"), thereby supporting the inference of a decentralized structure and the "headquarters" in California could qualify as the "nerve center" in that scheme. Attempting to characterize that the "the Human Resources function" is in Pennsylvania, not in Los Angeles County as Appellant alleged, Paragraph 4 of the declaration states that, "a substantial majority" of the corporate decisions,

including operational, executive, and administrative policy "are all made at its headquarters." However, this creates an ambiguity given that the same paragraph began with the statement that PPG had a number of "headquarters" out of Pennsylvania such that the phrase, "all made at its headquarters" could be, as the PMK later revealed, "all made at its [Pittsburgh] headquarters or at the other headquarters" which could include at the California, Los Angeles County "headquarters" testified to by PMK Paula Holman. In addition, Appellee's declaration vaguely states "a substantial majority of the corporate decisions…" begging the question, Where is the "insubstantial minority" of the corporate decisions of PPG otherwise being made?

Another evident ground of error was the district court judge's failure to require, in direct contravention of U.S. Supreme Court case law, evidentiary submissions from Appellee after PPG filed its notice of removal and after Appellant indicated that Robinson contested the Appellee contention that the amount in controversy was sufficient relative to the $75,000.00 jurisdictional threshold. *See*, *Dart Chrokee Basin Operating Co., LLC. v. Owens*, 574 U.S. 81, 87–89 (2014) ("Evidence establishing the amount is required by [28 U.S.C] § 1446(c)(2)(B) only when the plaintiff contests…the defendant's allegation."); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995 (9th Cir. 2022) ("The district court also erred in how it approached

the amount in controversy analysis[;] [b]ecause Plaintiff contested removal, [defendant] Roadrunner was required to show the amount in controversy by a preponderance of the evidence.").

## IV. THE VARIOUS PROCEDURAL RULINGS OF THE DISTRICT COURT EACH MILITATED TO EFFECT AN UNFAIR MISCARRIAGE OF JUSTICE AND WERE AN ABUSE OF DISCRETION, WARRANTING REVERSAL OF THE RESULTING JUDGMENT.

### A. The District Court Erred in Failing to Grant Appellant's Motion to Continue Hearing on PPG's Motion for Summary to Allow Further Discovery.

Appellant moved to continue or deny Appellee's motion for summary judgment of August 2, 2021 (8-ER-1364–99) pursuant to Federal Rule of Civil Procedure rule 56. (7-ER-1169-1362; 11-ER-2126–2309; 15-ER-3147.) The district court's denial of Appellant's motion to continue a summary judgment hearing pending further discovery was an abuse of discretion. *See*, *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d at 892; This Court should follow the rule and rationale stated in *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987) wherein the Court reiterated that, "The district court should permit discovery if it appears from the affidavits filed that the party opposing the summary judgment motion could not, for reasons stated, present facts essential to justify his opposition," citing Fed. R. Civ. P. 56(f). In *Hollander v. Am. Cyanamid Co.*, 895 F.2d at 84–85, the appellate court

vacated a district court's summary judgment on discriminatory discharge because district court's refusal to compel answers, including "me too" evidence, from Appellee defendant deprived Appellant of "evidence potentially helpful to his attempt to assemble such a quantum of circumstantial evidence supporting his argument of pretext." Here, the district court abused its discretion because Appellant demonstrated that the additional discovery would have precluded summary judgment. *See*, *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (stating that denial is disfavored when a plaintiff specifically identifies relevant information and points to "some basis" for its existence).

As Appellee prepared and then filed its motions for summary judgment ("MSJ"), Appellee also repeatedly obstructed relevant and essential discovery requested by Appellant. (7-ER-1174–76.) After months of thwarting the taking by Appellant of depositions of key witnesses, Appellee finally scheduled on June 18, 2021 the deposition of defendant David Sebold. However, everything was done to prevent a meaningful and full deposition with a start time of 1:00 p.m., which was moved up to 2:00 p.m.—and then a "hard stop" at 3:00 p.m., a surprise communicated by defendant Sebold, thereby allowing a mere one hour deposition of a critical MSJ declarant and codefendant. (11-ER-2154–55; 13-ER-2653.)

53

Appellee's blocking of discovery induced Appellant to seek court assistance by filing two motions to compel. (13-ER-2502–3629 and 12-ER-2311–2500.) The U.S. Magistrate Judge on July 23, 2021 granted Appellant's motion, ordering Appellee to amend and supplement specified discovery responses, including ordering defense to produce previously withheld resumes and interview notes, by August 2, 2021. (9-ER-1757, 1766–67.) The Magistrate noted that, "[i]f there were more time remaining in discovery [which would exist if the matter were to be continued by the assigned judge], the Court would direct the parties to meet and confer further as to reasonable limitations to these discovery requests or the Court would hold an informal discovery conference to propose such a limitation," but stated "[h]ere, however, there is insufficient time for such further steps." (9-ER-1764.) Appellant sought, among other items, "me too" evidence, and information and documentation aimed at demonstrating how, Robinson's doing very well in the areas that were in the job description(2-ER-142:14–19), compared with other applicants. However, even with a court order Appellee failed to produce the records (2-ER-142:20–26) and, despite this being critical evidence showing comparison to the other candidates (2-ER-144:6–21), the district court granted the motion for summary judgment. The court did this after denying the motion to continue and despite the magistrate's admonitions that more time would allow more enforcement of Appellant's needed discovery.

Appellant submitted his supplemental brief in support of his motion to continue or deny the motion for summary judgment on August 5, 2021. (7-ER-1169–1362.) In his supplemental brief Appellant averred: 1) that Robinson needed to obtain the ten resumes provided to defendant David Sebold; 2) that Appellee was withholding that information and documentation ; 3) that other than Robinson's resume, PPG did NOT produce the initial nine candidate's resumes; and 4) that Appellee also had redacted all contact information on any of the resumes produced. (7-ER-1170.) Appellant advised the district court that PPG withheld Sebold's interviews and "grading sheet" records, and how Appellant now needed to secure an order to compel compliance with the July 23, 2021 discovery order. (*Id.* at 1174:15–28.) The documents would provide compelling circumstantial evidence that Appellant was not selected or even granted an in-person interview for the position because he was too old and allow Appellant to respond to Appellee's revised separate statement and other facts and thereby rebut PPG's allegation of no genuine issues of fact. (7-ER-1174–75.)

Appellant attempted also to point out to the court some of the glaringly inaccurate statements made by the Appellee to the court, as for example, Appellee PPG's inaccurate representations that in a "spirit of good faith" defense counsel had supplemented its discovery responses (10-ER-1775:18–21), when the truth was otherwise. (7-ER-1175:19–23, 1321–22.) Further, Appellant conveyed to the district court: how

55

Appellee production *omitted* the resumes of those candidates who were actually given to Sebold (the nine candidates) or actually interviewed for the production supervisor position Robinson applied for as evident from the email scheduling selected candidates compared to the resumes Appellee deigned to produce selectively while withholding identifying information on July 12, 2021 (compare 7-ER-1179–80, with 7-ER-1181–1308). This violated the Magistrate's order of July 23, 2021, specifically ordering PPG to produce *all* the resumes and interview notes. (7-ER-1319–20) and warranting production of at least 10 resumes provided by the headhunter, not yet provided by PPG. (7-ER-1309–20).

Appellant also emphasized the critical need to complete the depositions of the PMK regarding the age demographics (statistical evidence), of the employees within the Aerospace Business unit of PPG where Robinson applied and how necessary it was to obtain the evidence being wrongly withheld by Appellee so that meaningful, complete depositions could be taken of Sebold, Arnold (HR) and the PMK on age demographics. (7-ER-1176.) Appellee produced for deposition PPG's PMK but she declined to testify at her first deposition session on all except one of several categories specified in the deposition notice; consequently, Appellant noticed a continued PMK deposition regarding the other categories for July 16, 2021Appellee. (7-ER-1176:12–17.) However, when the noticed PMK deposition occurred on July 16, 2021, neither Appellee counsel nor PPG's PMK

appeared, and Plaintiff took a certificate of non-appearance.

(7-ER-1176, 1360–62.). In sum, PPG repeatedly sought to delay or deny Robinson the right to obtain essential discovery and evidence in this matter, even when ordered to do so. Robinson had diligently sought to obtain documents from early on and sought to depose critical witnesses in this matter, only to face repeated and willful obstruction from PPG perpetrated against Robinson in that regard. (7-ER-1174–76; 11-ER-2150–57.)

The grant of summary judgment should be reversed based on the lower court's refusal to compel discovery responses or to continue the MSJ to allow time for further completion of discovery and compliance with the magistrate's discovery to ensure that Appellant would secure the receipt of vital discovery. *Metabolife Int'l. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001), citing *Anderson*, 477 U.S. at 250 n. 5 (the Supreme Court restated the rule as requiring, rather than merely permitting, discovery "where the nonmoving party has not had the opportunity to discover information that is essential to its opposition."). The lower court abused its discretion in denying the continuance request and granted summary judgment.

**B. The Lower Court's OSC Rulings Disregarding the Appellant's Late Opposition, the Order Striking Corrected Separate Statement and The Denial of the Request to Strike PPG's Non-compliant Reply Separate Statement Demonstrate an Abuse of Discretion.**

A court's local rules have the force and effect of law, so long as they are not inconsistent with statutes or the Federal Rules. *See*, *Atchison, Topeka & Santa Fe R.R. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998). Here, Central District Local rules 7–13 and 83–7 pertain to sanctions for late filings; however, the manner in which the district court judge applied local rules regarding timing and form of opposition and reply paper submissions, in effect, were "inconsistent with statutes or the Federal Rules" in that summary judgment was granted as a penalty, in effect. Moreover, a district court does not have the power to impose sanctions against attorneys without affording them procedural due process. *See*, *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d at 522. (requiring procedural protections of notice and opportunity to be heard before sanctions may be imposed).

In the present case, the court *sua sponte*, issued on August 25, 2021 an order to show cause directed, *not at appellant*, but only at Appellant's counsel after noting Appellant's opposition papers to the second motion for summary judgment were days late. The order to show cause directed at counsel required a response as to why the Opposition

brief should not be stricken, or why *counsel* should not be sanctioned, for having filed the Opposition brief late." (1-ER-29–30.) Taking the matter under submission, the court then on December 9, 2021 ordered that it "**DISCHARGES** its August 25, 2021 Order to Show Cause." (1-ER-9:16.) The court erred by acting beyond that point to sanction Robinson with, in effect, dismissal of his case in the face of material evidence refuting Appellee's MSJ.

First, having ordered that its Order to Show Cause ("OSC") was "discharged" the court lost all jurisdiction to issue any sanction based on the facts and circumstances presented in connection with that OSC, including reference to the corrected separate statement made by Appellant's counsel. The order of discharge disposed of all matters covered by the OSC, including appellant's request to strike appellee's reply revised statement and his argument that the matter be continued in response to that appellee noncompiance and the corrected separate statement of appellant be thereby deemed timely. Having discharged the OSC by written order, the court was not at liberty to re-adjudicate or consider other sanctions for the same conduct without giving Appellant further due process notice and opportunity to heard. *Miranda v. Southern Pac. Transp. Co.*, 710 F.2d at 522 (requiring procedural protections of notice and opportunity to be heard before sanctions may

be imposed). In addition, the sanction of dismissal was an abuse of discretion in light of the circumstances of the documented illness of counsel.

The district court stated that it considered Appellant's opposition motion and evidence before it so it could come within the holding of *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) which held that a motion for summary judgment cannot be granted simply because the opposing party violated a local rule. However, as the above analysis shows, the district court did not review the record and failed to consider Appellant's opposition evidence or did this so inadequately such that the order striking and disregarding the opposition should be reversed, and the grant of summary judgment found to be an abuse of discretion. Moreover, the ruling should be treated as an impermissible, indirect "sanction" of dismissal for violation of local rules when lesser sanctions were warranted by controlling case law limiting the district court power to sanction.

In the context of the OSC, and manner in which the court went out of its way to sanction Appellant while declining to sanction Appellee for anything inluding misinforming the court while opposing the motion to remand, the denial of the motion to continue effectively prevented Appellant from presenting evidence the court considered necessary to oppose the motion for summary judgment, leading to the court then improperly granting PPG's motion for summary judgment. During the

adjudication of the motion to continue and the motion for summary judgment the court was charging Appellant with violation of local rules. While the court's order of dismissal took the form of a grant of summary judgment based on what the court perceived as Appellant's failure to produce evidence showing a triable issue of fact, in substance, the district court's ruling was in the nature of a dismissal as a sanction for failing to adhere to the district court's scheduling order and other rules. The ruling was not based on Appellant's inability to produce evidence needed to show a triable issue of fact; rather, it was based on what the district court perceived as Appellant's counsel's failure to discharge his obligations to prepare the case within the time permitted by the court's scheduling order, including what the court deemed "lack of diligence" in discovery (one ground given to deny the motion for continuance). Most incomprehensively, the court ignored the compelling showing of attorney Flynn's medical emergency that led to the day(s) late Opposition filing, which was indisputably supported by Appellant's attorneys' affidavits and medical records.

This court should follow the rule and rational in *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, wherein the court vacated a district court order striking the plaintiff's expert report and demand for damages, because the order was "akin to dismissing the action altogether," as a sanction for the untimeliness of plaintiff's expert disclosure. 694 F.3d 155, 159 (2d Cir.2012). The court there explained,

"[I]n deciding on the suitability of lesser sanctions [than dismissal of the plaintiff's case], and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the [misconduct]." *Id.* (quoting *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996)). The court held that, "While we do not doubt that a sanction is appropriate, the facts before us suggest that sanctions should be imposed on the attorney, and not bar [the plaintiff] from a full presentation of its case." *Id.*

Similarly, in the instant case, the district court's denial of Appellant's motion to continue the hearing to either allow the corrected version be operative to decide or allow for the needed discovery, the sanctions issued post-discharge on the OSC to disregard the opposition and to strike the Corrected Separate Statement (rather than continue the hearing to allow discovery and extend timelines or issue monetary sanctions against counsel), with the consequent grant of summary judgment to PPG were, in substance, sanctions for Robinson's attorney's perceived failure to comply with the court's scheduling order.

Here, it is clear Robinson was without fault in causing what the district court perceived as local rules violations, delays, or failures to act within the time set by the court's schedule, and that these were not strategically designed to disadvantage the adversary but were simply

the product of special medical emergency circumstances of Appellant's counsel Flynn, and the limiting of Appellant's counsel staff resources due to the pandemic. The district court order does not show any consideration of the special circumstances relating to that counsel's medical impairment let alone consideration of a lesser sanction and one not penalizing the party himself. In these circumstances, Justice beckons the Court to find on appeal that the district court abused its discretion and that, it was an abuse of discretion for the district court not to sanction, if at all, only Appellant's attorney rather than bar Robinson from his claims and from completing necessary discovery following continuance of the hearing and, as a consequence, dismissing his case. *See*, *World Wide Polymers, Inc.*, 694 F.3d at 160; *Dodson*, 86 F.3d at 42.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests this Court set the district court's erroneous grant of summary judgment aside and remand this case to state court.

Dated: August 1, 2022                    By: /s/ Armando M. Galvan

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

### 9th Cir. Case Number 21-55023

The undersigned attorney or self-represented party states the following

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated: August 10, 2022          By: /s/ Armando M. Galvan

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **14,000 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: August 10, 2022          By: /s/ Armando M. Galvan

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 10, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system on all parties or their counsel.

Dated: August 9, 2022               By: /s/ Armando M. Galvan

**ADDENDUM – PERTIENT STATUTES AND RULES**

**TABLE OF CONTENTS**

Federal Rules of Civil Procedure, Rule 56. Summary Judgment

Central District Court of California, Local Rule 7-13

Central District Court of California, Local Rule 83-7

**Federal Rules of Civil Procedure, Rule 56. Summary Judgment**

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any

material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**Central District Court of California, Local Rule 7-13**

L.R. 7-13 Sanctions for Late Filing. A party filing any document in support of, or in opposition to, any motion noticed for hearing as above provided after the time for filing the same shall have expired, also shall be subject to the sanctions of L.R. 83-7 and the F.R.Civ.P.

**Central District Court of California, Local Rule 83-7**

L.R. 83-7 Sanctions - Violation of Rule. The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:

> (a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;

> (b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or

> (c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.