**Appeal No. 22-55023**

---

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

ELWYN ROBINSON, an individual,

*Plaintiff and Appellant*

v.

PPG INDUSTRIES, INC., a Pennsylvania Corporation;
DOES 1 through 10, inclusive,

*Defendant and Appellee*

---

On Appeal from a Judgment
From Grant of Motion for Summary Judgment
of the United States District Court for the
Central District of California
Honorable Otis D. Wright, II
Case No. 2:19-cv-04033-ODW-RAO

---

# APPELLEE'S ANSWERING BRIEF

---

Craig G. Staub, Bar No. 172857
cstaub@littler.com
Amelia A. McDermott, Bar No. 204997
amcdermott@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, California 90071
Telephone: 213.443.4300
Facsimile: 213.443.4299

Attorneys for Defendant and Appellee,
PPG Industries, Inc.

## CORPORATE DISCLOSURE STATEMENT

Defendant and Appellee PPG Industries, Inc., a Pennsylvania Corporation ("PPG"), submits the following Corporate Disclosure Statement:

The undersigned, counsel of record for PPG in the above-captioned matter identifies the following entities as parent corporations and/or any publicly held corporation owning 10% or more of PPG's stock:

PPG Industries, Inc. is a publicly held company whose shares are traded on the New York Stock Exchange under the ticker symbol PPG. PPG Industries, Inc. has no parent corporation, and no publicly held corporation owns 10% or more of PPG Industries, Inc.'s stock.

Date: November 8, 2022        LITTLER MENDELSON, P.C.

                             */s/ Craig G. Staub*
                          Craig G. Staub, Esq.
                          Amelia McDermott, Esq.
                          Attorneys for Defendant and Appellee
                          PPG INDUSTRIES, INC.

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...........................................................................1

II.   STATEMENT OF JURISDICTION ................................................4

III.  COUNTER-STATEMENT OF THE ISSUES ..................................4

IV.   COUNTER-STATEMENT OF THE CASE ......................................5

   A.   RELEVANT PROCEDURAL HISTORY ...........................................5

      1.   ROBINSON'S ATTEMPT TO NAME A SHAM
           DEFENDANT IN THE DISTRICT COURT FAILED,
           LEAVING PPG AS THE SOLE DEFENDANT. ....................5

      2.   THROUGH COUNSEL, ROBINSON REPEATEDLY
           FAILED TO TIMELY FILE HIS SUMMARY
           JUDGMENT OPPOSITION........................................6

      3.   THE DISTRICT COURT CORRECTLY GRANTED
           SUMMARY JUDGMENT, CONSIDERING
           ROBINSON'S UNTIMELY OPPOSITIONS. ..........................8

      4.   THE DISTRICT COURT PROPERLY GRANTED
           SUMMARY JUDGMENT WHILE STRIKING
           ROBINSON'S "CORRECTED" OPPOSING
           STATEMENT WHICH WAS FILED AFTER PPG'S
           REPLY BRIEF........................................11

   B.   THE UNDISPUTED MATERIAL FACTS SUPPORTED BY
        THE RECORD. ...................................................12

      1.   PPG IS A PENNSYLVANIA CORPORATION WITH
           ITS PRINCIPAL EXECUTIVE OFFICES IN
           PITTSBURGH. ......................................12

      2.   PPG IS AN EQUAL OPPORTUNITY EMPLOYER
           AND ITS POLICIES STRICTLY PROHIBIT
           DISCRIMINATION, HARASSMENT AND
           RETALIATION. ....................................14

      3.   PPG SOUGHT TO HIRE TWO SEALANTS TEAM
           LEADERS AT ITS FACILITY IN MOJAVE,
           CALIFORNIA. ......................................15

# TABLE OF CONTENTS
(CONTINUED)

PAGE

V.    SUMMARY OF ARGUMENT....................................................24

VI.   STANDARD OF REVIEW........................................................27

VII.  LEGAL ARGUMENT ..............................................................28

    A.   THE DISTRICT COURT HAD JURISDICTIONAL
        AUTHORITY TO ENTER JUDGMENT BECAUSE IT
        PROPERLY DIMISSED SEBOLD AND DENIED
        ROBINSON'S MOTION TO REMAND BASED ON
        DIVERSITY JURISDICTION............................................28

        1.   FOR PURPOSES OF DIVERSITY JURISDICTION,
            THE QUESTION IS NOT WHERE PPG'S
            AEROSPACE OPERATIONS ARE LOCATED BUT
            WHERE PPG HAS ITS PRINCIPAL PLACE OF
            BUSINESS...............................................................31

        2.   THE DISTRICT COURT PROPERLY FOUND THE
            AMOUNT IN CONTROVERSY EXCEEDS $75,000. ..........33

        3.   THE DISTRICT COURT PROPERLY FOUND THAT
            SEBOLD WAS A SHAM DEFENDANT..............................35

    B.   THE DISTRICT COURT PROPERLY GRANTED
        SUMMARY JUDGMENT....................................................43

        1.   THE DISTRICT COURT PROPERLY GRANTED
            SUMMARY JUDGMENT ON ROBINSON'S AGE
            DISCRIMINATION CLAIM. ................................................44

        2.   THE DISTRICT COURT PROPERLY GRANTED
            SUMMARY JUDGMENT ON ROBINSON'S CLAIM
            FOR RETALIATION. .............................................................52

        3.   THE DISTRICT COURT PROPERLY GRANTED
            SUMMARY JUDGMENT ON ROBINSON'S
            HARASSMENT CLAIM.........................................................55

        4.   THE DISTRICT COURT PROPERLY GRANTED
            SUMMARY JUDGMENT ON ROBINSON'S CLAIM
            FOR FAILURE TO PREVENT DISCRIMINATION,
            RETALIATION, AND HARASSMENT.................................58

## TABLE OF CONTENTS
(CONTINUED)

5.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON ROBINSON'S CLAIM FOR PUNITIVE DAMAGES....................................................59

C.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION. ......................................................................60

VIII.  CONCLUSION.............................................................................62

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Boeing Co.*,
  821 F.3d 1111 (9th Cir. 2016) ............................................................27

*America United for Kids v. Rousseau*,
  985 F.3d 1075 (9th Cir. 2021) ......................................................28, 60

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................43

*Association of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*,
  280 F.3d 901 (9th Cir. 2022) ............................................................27

*Basich v. Allstate Ins. Co.*,
  87 Cal.App.4th 1112 (2001) .............................................................58

*Begnal v. Canfield & Assocs., Inc.*,
  78 Cal.App.4th 66 (2000) .................................................................51

*Boyd v. City & County of San Francisco*,
  576 F.3d 938 (9th Cir. 2009) ..............................................26, 28, 59

*Briano v. Conseco Life Ins. Co.*,
  126 F.Supp.2d 1293 (C.D. Cal. 2000) ...............................................35

*Briggs v. Merck Sharp & Dohme*,
  796 F.3d 1028 (9th Cir. 2015) ..........................................................27

*California Union Ins. Co.,* 914 F.2d at 1278 .........................................60

*Caterpillar*, *Inc.*, *v. Lewis*,
  519 U.S. 61 (1996)............................................................................34

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)......................................................................28, 60

*Cofer v. Parker-Hannifin Corp.*,
  194 F.Supp.3d 1014 (C.D. Cal. July 8, 2016) ..................................39

# TABLE OF AUTHORITIES
## (continued)

Page

*Coleman v. Quaker Oats*,
    232 F.3d 1271 (9th Cir. 2000) ............................................................50

*Concrete Pipe & Products of Calif., Inc. v. Construction Laborers
    Pension Trust for Southern Calif.*,
    508 U.S. 602 ...............................................................................25, 27, 33

*Cucuzza v. City of Santa Clara*,
    104 Cal.App.4th 1031 (2001) ............................................................50

*Dee v. Vintage Petroleum, Inc.*,
    106 Cal.App.4th 30 (2003) ....................................................40, 41, 42

*DeJung v. Superior Court*,
    169 Cal.App.4th 533 (2008) ..............................................................45

*E.E.O.C. v. Ins. Co. of N. Am.*,
    49 F.3d 1418 (9th Cir. 1995) .............................................................49

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v.
    Clorox Co.*,
    353 Fd 1125, 1130 (9th Cir. 2004) ....................................................60

*Etter v. Veriflo Corp.*,
    67 Cal.App.4th 457 (1998) .........................................................36, 56

*Faragher v. Boca Raton*,
    524 U.S. 775 (1998)....................................................................36, 37

*Fisher v. San Pedro Peninsula Hosp.*,
    214 Cal.App.3d 590 (1989) .................................................36, 55, 56

*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) .............................................................55

*Goodman v. Raytheon Co.*,
    No. B252818, 2014 WL 6438725 (Cal. Ct. App. Nov. 17,2014)......................46

*Green v. State*,
    42 Cal.4th 254 (2007) .......................................................................45

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Guerin v. Winston Indus., Inc.*,
  316 F.3d 879 (9th Cir. 2002) .............................................................27

*Guz. Bechtel Nat. Inc,* 24 Cal.4th 317, 354 (2000)...........................................43, 48

*Harman v. Apfel*,
  211 F.3d 1172 (9th Cir. 2000) ..................................................26, 28, 59

*Herberg v. California Institute of the Arts*,
  101 Cal.App.4th 142 (2002) .......................................................36, 38

*Hersant v. Dep't of Soc. Servs.*,
  57 Cal.App.4th 997 (1997) ...............................................................44

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)...........................................................................31

*Husain v. Olympic Airways*,
  316 F.3d 829 (9th Cir. 2022), aff'd 540 U.S. 644 (2004) .....................25, 27, 33

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) .............................................................27

*James v. Dependency Legal Grp.*,
  253 F.Supp.3d 1077 (S.D. Cal. 2015)..................................................57

*Janken v. GM Hughes Elecs.*,
  46 Cal.App.4th 55 (1996) ......................................................24, 38, 39

*Jones v. Lodge at Torrey Pines P'ship*,
  42 Cal.4th 1158 (2008) .....................................................................38

*Jones v. Royal Admin. Services, Inc.*,
  887 F.3d 443 (9th Cir. 2018) .............................................................27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)..........................................................................28

*Kruso v. Int'l Tel. & Tel. Corp.*,
  872 F.2d 1416 (9th Cir. 1989) ...........................................................35

# TABLE OF AUTHORITIES

(continued)

**Page**

*Lively v. Wild Oats Markets, Inc.*,
   456 F.3d 933 (9th Cir. 2006) ............................................................27

*Lomax v.Sellenthin*,
   1999 WL 281120 (N.D. Cal. Apr. 26, 1999)..............................46, 47

*Lyle v. Warner Bros. Television Prod.*,
   38 Cal.4th 264 (2006) ......................................................................56

*Martin v. Lockheed Missiles & Space Co.*,
   29 Cal.App.4th 1718 (1994) .............................................................44

*McBroom v. Wal-Mart Stores, Inc.*,
   2016 WL 3549606 (E.D. Cal. June 30, 2016) .............................37, 42

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)..........................................................................43

*Miller v. Department of Corrections*,
   36 Cal.4th 446 (2005) ......................................................................56

*Mock v. Michigan Millers Mutual Ins. Co.*,
   4 Cal.App.4th 306 (1992) .................................................................58

*Mokler v. County of Orange*,
   157 Cal.App.4th 121 (2007) .............................................................56

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) ..........................................................35

*Padfield v. AIG Life Ins. Co.*,
   290 F.3d 1121 (9th Cir. 2002) ..........................................................27

*Reno v. Baird*,
   18 Cal.4th 640 (1998) ................................................................24, 39

*Roby v. McKesson Corp.*,
   47 Cal.4th 686 (2010) ................................................................40, 41

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938)..........................................................................33

# TABLE OF AUTHORITIES
(continued)

Page

*Tarin v. County of Los Angeles*,
 123 F.3d 1259 (9th Cir. 1997) .......................................................... 50

*Tipton v. Airport Terminal Services*,
 2019 WL 185687 (C.D. Cal. Jan. 14, 2019) ................................. 36, 42

*Trop v. Sony Pictures Entm't Inc.*,
 129 Cal.App.4th 1133 (2005) ............................................................ 44

*Trujillo v. Northern County Transit Dist.*,
 63 Cal.App.4th 280 (1998) ................................................................ 57

*United States Cellular Investment Co. of Los Angeles, Inc. v. GTE
 Mobilnet, Inc.*,
 281 F.3d 929 (9th Cir. 2002) ............................................................. 27

*United States v. Hughes Aircraft Co.*,
 162 F.3d 1027 (9th Cir. 1998) ........................................................... 27

*Villareal v. ExxonMobil Corp.*,
 No. B245662, 2014 WL 1789547 (Cal. Ct. App. May 6, 2014) ........ 46

*Wasco Prods., Inc. v. Southwall Tech, Inc.*,
 435 F.3d 989 (9th Cir. 2006) ............................................................. 57

*Washington v. Lowes HIW, Inc.*,
 75 F. Supp. 3d 1240 (N.D. Cal. 2014) ............................................... 55

*White v. Ultamar, Inc.*,
 21 Cal.4th 563 (1992) ........................................................................ 59

*Yanowitz v. L'Oreal USA*,
 36 Cal.4th 1028 (2005) .......................................................... 51, 52, 54

*Young v. United States*,
 769 F.3d 1047 (9th Cir. 2014) ........................................................... 27

**Statutes**

28 U.S.C. § 144(a) ...................................................................................... 28

# TABLE OF AUTHORITIES
### (continued)

**Page**

28 U.S.C. § 1291 ....................................................................................4

28 U.S.C. § 1331 ..................................................................................28

28 U.S.C. § 1332 .............................................................................4, 30

28 U.S.C. § 1332(a) .............................................................................28

28 U.S.C. § 1332(c) .............................................................3, 25, 30, 31

Civ. Code § 3294(a) .............................................................................58

Civ. Code § 3294(c) .............................................................................59

Gov't Code § 12940(j)(1) ...............................................................35, 55

## Other Authorities

Fed. R. App. P. 32(a)(7)(C) .................................................................62

Fed. R. Civ. P. 1 ...................................................................................60

Fed. R. Civ. P. 56(a) ............................................................................43

Fed. R. Civ. P. 56(d) ............................................................................27

U.S. Const. Art. III, § 2, cl. 1 ...............................................................28

## I.    INTRODUCTION

On December 9, 2021, the District Court correctly granted Defendant and Appellee PPG Industries, Inc.'s ("PPG") motion for summary judgment after properly denying Plaintiff and Appellant Elwyn Robinson's motion to remand ("Robinson"). Indeed, Robinson's appeal is nothing more than a continuation of the disingenuous and chaotic litigation practices employed in the District Court. In correctly granting PPG's motion for summary judgment, the District Court highlighted Robinson's counsel's pervasive failure to respect federal procedure as follows:

> Rather than impose monetary sanctions, the Court finds ample basis to *disregard Robinson's late Opposition as a result of Robinson's counsel's chaotic litigation tactics and pervasive failure to respect federal procedure* …

(Excerpts of Record, Vol. I, p. 9 ("1-ER-9"), italics added.)

This appeal is simply more of the same. For instance, in his brief Robinson argues against the District Court's proper denial of his motion to remand. (AOB 40-52.) Yet, Robinson's Notice of Appeal only includes the District Court's correct order granting summary judgment and the resulting judgment. (15-ER-3110-3141.) Robinson then proffers the misplaced contention that the District Court erred in granting summary judgment because it "utterly disregarded" three purportedly "smoking gun" emails. (AOB 1-2.) This fallacy, however, is belied by the plain language of the District Court's order which provides a detailed discussion of

Robinson's email "evidence" and why it is not sufficient evidence of discrimination or retaliation as follows:

> In short, too much in the record militates against the conclusions Robinson urges – first, that Sebold himself said 'too senior,' and second, that he meant 'too old' by it – for the Court to conclude that Lyndon's email constitutes direct evidence of discrimination on the part of PPG …

(1-ER-15-18:5-12.)

As the District Court's detailed twenty-five-page order granting PPG summary judgment establishes, based on the undisputed material facts in evidence "PPG is entitled to summary judgment as to all of Robinson's claims …" (1-ER-27:23-24.) Robinson presented no evidence – nor does any evidence exist – to meet his burden of proof to substantiate his claims. Thus, the District Court's well-reasoned order granting summary judgment was proper and the judgment should be affirmed.

Robinson's outrageous unsupported contention that PPG "concealed material facts" does nothing to change this result. (AOB 1.) Quite the opposite, as the District Court found it was Robinson – not PPG – that failed in his attempt to deceive the District Court through his unsuccessful motion to remand:

> On May 8, 2019, PPG removed this action based on federal diversity jurisdiction … Robinson moved to remand on the basis of lack of diversity jurisdiction … *The Court denied the Motion, finding Sebold to be a sham defendant and dismissing him from the action* … In so doing, the Court noted that the only claim Robinson had

- 2 -

> asserted against Sebold was the harassment claim and
> found that no claim for harassment against Sebold was or
> could be alleged under the facts of the case …

(1-ER-6, emphasis added.)

After the District Court's discovery of Robinson's sham defendant, the sole defendant was and remains PPG, which Robinson concedes is a Pennsylvania Corporation with its principal executive office in Pittsburgh. (1-ER-39-40; 14-ER-2994-2996; Motion Exhibits, Ex. 5, p. 25.) Here, Robinson proffers the same argument made to the District Court that PPG's aerospace division's headquarters is somehow PPG's headquarters premised on similar irrelevant evidence. (1-EOR-39:9-18.) The District Court rejected the argument finding "[b]ased on all of the information provided by both parties, the Court finds that PPG's nerve center is located in Pittsburgh, Pennsylvania." (1-EOR-40:7-8.) Here, Robinson's faulty argument premised on the location of PPG's aerospace division does nothing to contradict that PPG's "nerve center" is in Pittsburgh and its citizenship is Pennsylvania for purposes of any diversity of citizenship analysis. (28 U.S.C. § 1332(c).)

As detailed below, Robinson's appeal should be denied, the orders of the District Court should be upheld, and the judgment entered in favor of PPG should be affirmed.

## II.    STATEMENT OF JURISDICTION

The District Court had jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and this Ninth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 as the District Court's grant of summary judgment resulted in a final decision.

## III.   COUNTER-STATEMENT OF THE ISSUES

1.    Whether the District Court properly denied Robinson's motion to remand based on diversity of citizenship where the record establishes that defendant PPG is a citizen of Pennsylvania, it is undisputed Robinson is a citizen of California, and Robinson did not contest that the matter in controversy exceeds $75,000 in his moving papers before the District Court?

2.    Whether the District Court's grant of summary judgment as to Robinson's claims for age discrimination, retaliation, harassment, and failure to prevent along with punitive damages was properly granted where the undisputed material facts establish that Robinson has no viable claim as a matter of law?

3.    Whether the District Court abused its discretion when it extended the briefing schedule multiple times allowing Robinson almost ten weeks to oppose PPG's summary judgment, when it struck Robinson's "Corrected Separate Statement" filed after PPG's reply brief, and when it disregarded Robinson's late-filed opposition - which it still considered in granting summary judgment?

## IV.   COUNTER-STATEMENT OF THE CASE

### A.     RELEVANT PROCEDURAL HISTORY

#### 1.     Robinson's Attempt to Name a Sham Defendant in the District Court Failed, Leaving PPG as the Sole Defendant.

On March 8, 2019, Robinson filed this action for violation of the California Fair Employment and Housing Act ("FEHA") in the Los Angeles Superior Court. (1-ER-36:17-19.) In response, on May 8, 2019, PPG removed the case based on federal diversity jurisdiction. (15-ER-3042-3108.) Robinson then moved to remand on the basis that the District Court did not have jurisdiction over the matter because diversity of jurisdiction was not satisfied, which was denied by the District Court. (1-ER-36-37.)

In so doing, Robinson argued that complete diversity did not exist because he and then-named defendant David Sebold ("Sebold") are both citizens of California. (1-ER-40.) The District Court rejected this argument finding that Sebold was "fraudulently joined" in the action. (1-ER-42:4-43:16.) Robinson's attempt to name a sham defendant to overcome diversity of citizenship failed, leaving PPG as the sole defendant.

In this regard, it was undisputed that Robinson is a citizen of California (1-ER-39:3-7) and the District Court found that "PPG is a citizen of Pennsylvania" (1-ER-40:24-25). Given this, the District Court correctly found "that there is complete diversity between Robinson and PPG." (1-ER-43:17-18.) Moreover, the District

Court explained that "Robinson does not discuss the amount in controversy in his Motion …" (1-ER-43:26-44:5.) Thus, the District Court properly denied Robinson's motion to remand. (1-ER-36-44.)

### 2. Through Counsel, Robinson Repeatedly Failed to Timely File His Summary Judgment Opposition.

On June 11, 2021, PPG filed its initial motion for summary judgment. (1-ER-6:25-26.) As explained by the District Court, "[s]hortly thereafter, Robinson made his first of a hydra-like series [of] requests for more time to oppose PPG's motion." (1-ER-6:26-27.) Primarily, Robinson requested more time to complete discovery. (1-ER-6:27-28.) The District Court granted Robinson's request in part, providing him with more time to oppose and "noting that both sides appeared to have engaged in 'unprofessional gamesmanship.'" (1-ER-7:1-3; 13-ER-2631-2634.) Not long after, Robinson filed a noticed motion to continue the deadline to file his summary judgment opposition. (1-ER-7:4-5; 11-ER-2126-2306.) Robinson then filed a late reply (1-ER-7:6; 9-ER-1500-1756) and two days later he filed a second ex parte application asking that the late reply be deemed timely (1-ER-7:7-8; 8-ER-1493-1498.) The District Court denied the application, struck the late reply, and ordered Robinson's counsel to show cause why he should not be sanctioned for misuse of the ex parte process. (1-ER-7:8-10; 8-ER-1491-1492.)

As permitted by the District Court, on August 2, 2021, PPG filed the operative motion for summary judgment. (1-ER-7:11-13; 8-ER-1364-1490.) That filing left

Robinson's motion to continue his opposition to the original motion for summary judgment in "procedural limbo." (1-ER-7:13-17; 6-ER-1166-1167.) To resolve this, the District Court applied Robinson's previously filed motion to continue to PPG's second motion for summary judgment, allowing him the opportunity to file supplemental briefing. (6-ER-1166-1167.) Ultimately, the District Court denied Robinson's motion to continue finding that "Robinson's arguments in support of a continuance lack merit, and PPG mounted a strong opposition. The record indicates that [the] discovery that PPG has provided is sufficient for Robinson to present a defense to PPG's summary judgment motion." (1-ER-34:16-19.) Nevertheless, the District Court found that "[g]iven that Robinson's opposition brief would be due less than a week from today's date, the Court adjusts the briefing schedule[,]" providing Robinson with more time to oppose. (1-ER-7:17-19, 35:14-21.)

Under that extended briefing schedule, Robinson still filed his opposition one day late (1-ER-7:20; 6-ER-941-1135) and filed a corrected opposition the next day. (1-ER-7:21-22; 5-ER-647-939). As a result of counsel's late filings, the District Court again extended the hearing and briefing schedule, discharged its prior order to show cause, and ordered Robinson's counsel to show cause why sanctions should not be imposed for filing late opposition briefs. (1-ER-7:22-25, 29.) In so doing, the District Court noted that "the Court carefully selected briefing deadlines to ensure fairness to the parties and sufficient time for the Court to review the papers.

Counsel's late filings have frustrated the purpose of the Court's selections." (1-ER-29.)

On August 27, 2021, PPG filed its reply to Robinson's opposition. (4-ER-512-645.) Then, after PPG had already filed its reply, Robinson filed an untimely "Corrected" Opposing Separate Statement. (1-ER-7:26-8:1, 2-ER-113-170.) On September 7, 2021, the District Court took PPG's summary judgment motion under submission. (1-ER-8:2-3.)

### 3. The District Court Correctly Granted Summary Judgment, Considering Robinson's Untimely Oppositions.

On December 9, 2021, the District Court issued its Order Striking Corrected Opposing Separate Statement [63] and Granting Defendant's Motion for Summary Judgment [53]. (1-ER-4-28.) In so doing, the District Court correctly found "that PPG meets its burden on summary judgment as to all five challenged claims. From that finding, the Court proceeds to grant PPG's Motion and dismiss each claim on two alternative bases: first, based on Robinson's failure to timely oppose, and second, even if the Court considers Robinson's opposition, Robinson fails to raise any triable issue." (1-ER-14:9-13.)

Robinson makes much of his assertion that the District Court "inflicted not monetary, but, instead, the near equivalent of terminating sanctions[]" by not considering his opposition papers. (AOB 9.) But, Robinson's faulty contention ignores that the District Court *did* consider his opposition, and found that he failed

to raise any triable issue of material fact. (1-ER-14:9-13.) Thus, Robinson's hyperbole over "near terminating sanctions" is much ado about nothing. (1-ER-4-28.)

While Robinson misrepresents that the District Court "utterly disregarded" "[a]ll the medical emergency and related special circumstances" that his counsel alleges caused the repeated late filings (AOB 9), this is not supported by the record. Quite the opposite, as the District Court explained:

> Counsel's oppositions were late not primarily because of last-minute unforeseen circumstances; they were late primarily because of a pervasive failure to timely conduct discovery. This is why counsel's proffered justifications, which focus on the vortex of personal and professional challenges in the days leading up to the opposition deadline, fall flat …

(1-ER-11:27-12:3.)

In fact, Robinson had *five times* longer than is provided by Local Rules to file his opposition, yet he still failed to do so timely:

> Robinson's counsel's responses to the aforementioned August 26, 2021 Order to Show Cause consist primarily of a showing of the health problems counsel was experiencing close to the opposition deadline as well as a showing that counsel's firm is overwhelmed and understaffed … Even assuming that counsel make a strong showing in both these sense, counsel's declarations and argument miss the broader point of the Court's Order to Show Cause and the reasons for imposing consequences for missing deadlines. By fixing their focus solely on the time crunch leading up to the date the opposition was due, counsel fail to address the fact that PPG's original motion

> for summary judgment was filed on June 11, 2021. The original motion and the operative Motion are substantially similar. Ultimately, Robinson's opposition was not due until August 19, 2021. In a typical case, a party before this Court has two weeks to oppose a motion for summary judgment … In this case, Robinson had almost ten weeks – and his opposition was still two days late.

(1-ER-9:22-10:9.)

The District Court similarly found Robinson's contention that additional time was needed to conduct discovery disingenuous:

> Moreover, the case schedule was set, and discovery opened, by June 18, 2020. Counsel makes no attempt to explain why they delayed in deposing key employees and conducting other ostensibly important discovery during the year leading up to the supposed time crunch …

(1-ER-10:10-22.)

Ultimately, the District Court found that Robinson's counsel's strategy in seeking extensions to conduct additional discovery was purposeful and nefarious:

> When the Court takes a bird's-eye view of the record, Robinson's counsel's strategy starting in early 2021 becomes clear. Robinson's myriad requests for continuances were never about needing more time to draft an opposition; **they were about counsel's attempts to arrange things so that they had substantial time to conduct discovery *after* PPG filed its motion for summary judgment.** When PPG's counsel refused to stipulate to as much, counsel proceeded to file a disingenuous ex parte application requesting continuances … The Court did not take the bait, … setting off a series of applications, requests, and responses that would ultimately span almost three dozen docket entries for a process that, in the ordinary case, occupies a grand total of

three docket entries.

(1-ER-10:23-11:4, bold added, italics in original.)

### 4. The District Court Properly Granted Summary Judgment While Striking Robinson's "Corrected" Opposing Statement Which Was Filed After PPG's Reply Brief.

The District Court found that "[i]n light of Robinson's counsel's failure to respect the procedures and deadlines set forth by the Federal Rules, the Local Rules, and th[e] Court, the Court disregards the original Opposition, (ECF No. 59), and the amended Opposition, (ECF No. 60), as untimely." (1-ER-12:3-6.) In addition, the District Court properly struck Robinson's "Corrected" Separate Statement "because Robinson filed it several days after PPG had filed its Reply, thus depriving PPG of a proper opportunity to respond." (1-ER-13:15-17.) As the District Court detailed:

> Robinson's failure was not merely that he filed his Corrected Separate Statement after it was due; instead, he filed it after PPG had already filed its own Reply and had prepared a Reply Separate Statement in response to Robinson's own Separate Statement. Accepting Robinson's Corrected Separate Statement would render PPG's Reply Separate Statement moot, and the Court would need to provide PPG with an opportunity to amend its Reply Separate Statement – all at additional cost to PPG and further delaying the resolution of this case. *See* Fed. R. Civ. P. 1.

(1-ER-13:1-7.)

Despite Robinson's counsel's repeated failure to timely file his opposition, the District Court nevertheless ultimately granted summary judgment on the merits

while considering Robinson's untimely filings. (1-ER-4-28.) As the District Court explained, "even if the Court considers Robinson's opposition, Robinson fails to raise any triable issue." (1-ER-14:11-13; 1-ER-21:6-11.

On January 3, 2022, Robinson then filed this appeal which attached a copy of the District Court's order granting summary judgment and the resulting judgment but did not include the District Court's order denying Robinson's motion to remand. (15-ER-3110-3141.)

### B.  THE UNDISPUTED MATERIAL FACTS SUPPORTED BY THE RECORD.

### 1.  PPG Is a Pennsylvania Corporation with its Principal Executive Offices in Pittsburgh.

It is undisputed that PPG is a Pennsylvania corporation with its principal executive offices are in Pittsburgh. (1-ER-39-40; 14-ER-2995 ¶3.) As PPG Senior Counsel, Greg Gordon ("Gordon") explained:

> Although PPG maintains headquarters in Hong Kong, Switzerland, and Brazil, PPG's global corporate headquarters and executive offices, from which PPG's officers direct, control, and coordinate the corporation's activities, are located at One PPG Place, Pittsburgh, Pennsylvania 15272. PPG's primary administrative and financial offices, including human resources, benefits and payroll, are located in … Pennsylvania, and a substantial majority of the corporate decisions, including operational, executive, and administrative policy are all made at its headquarters.

(14-ER-2995 ¶4.)

- 12 -

Gordon continued to detail that "[a]though PPG operates approximately 50 plants throughout the United States of America, some of which have local administrative departments for day-to-day operations, policy decisions for the entire company are made by the executives who reside in the global headquarters in Pittsburgh, Pennsylvania." (14-ER-2995 ¶5.) To this end, "PPG's annual meeting of shareholders is held in Pittsburgh, Pennsylvania[,]" "PPG's corporate books and records are kept in Pittsburgh, Pennsylvania[,]" and "[t]he majority of PPG's corporate officers and executives maintain offices at PPG's global headquarters in Pittsburgh, Pennsylvania, including the CEO, Senior Vice President and General Counsel, and Vice President and Chief Financial Officer." (14-ER-2995 ¶¶6-7, 9.)

Even the exhibits Robinson attempts to add for the first time on appeal through his opposed Motion to Supplement Record or, in the Alternative, to Take Judicial Notice (the "Motion") establish that PPG's principal executive office is in Pittsburgh, Pennsylvania. (Motion Exhibit 5, p. 25.) Specifically, PPG's Form 10-K states that it is a Pennsylvania corporation with its principal executive office located in Pittsburgh. (Motion Exhibit 5, p. 25.)

In fact, Robinson's counsel's declaration filed in support of his motion to remand concedes that "I conducted a business search on California's Secretary of State website … which revealed that PPG Industries, Inc. (PPG) only lists their corporate headquarters (Pittsburg[h], Pennsylvania) … In reviewing a financial

- 13 -

statement filed with the SEC, it states the company's principal executive offices are located in Pittsburg[h], PA … I also conducted a business search on the Pennsylvania Secretary of State website which revealed only PPG's corporate headquarters …" (14-ER-3013 ¶¶2-3.)

### 2. PPG Is an Equal Opportunity Employer and Its Policies Strictly Prohibit Discrimination, Harassment and Retaliation.

PPG is an Equal Employment Opportunity employer and maintains a written policy that PPG "will give equal consideration to all applicants for employment regardless of … age …" (4-ER-574 ¶50; 8-ER-1419 ¶3, 1422.) As PPG's written policy instructs:

> Employees that feel that [they] are a victim of harassment should notify a member of management as soon as possible. In response, the Company will take prompt, appropriate action. Retaliation against employees for making a good faith complaint of harassment is prohibited.

(8-ER-1419 ¶4, 1424.)

PPG prohibits retaliation against anyone's good faith efforts to comply with its antidiscrimination policies. (4-ER-576 ¶53; 8-ER-1419 ¶4, 1424.) PPG encourages anyone who experiences or witnesses misconduct to report it immediately to any member of PPG's management. (4-ER-575 ¶51; 8-ER-1419 ¶4, 1424.) PPG takes all complaints seriously and promptly investigates any complaint received. (4-ER-576 ¶52; 8-ER-1419 ¶4, 1424.)

Here, Robinson never complained to PPG of discrimination or harassment. (4-ER-577 ¶54; 8-ER-1450:5-1451:4.) In fact, Robinson never spoke to anyone at PPG other than one thirty-minute telephonic screening interview with Sebold. (4-ER-578 ¶55; 8-ER-1457:1-19.) PPG's third-party recruiter, Ron Lyndon ("Lyndon"), similarly testified that he never received a complaint of discrimination or harassment from Robinson or any other candidate regarding PPG. (4-ER-579 ¶56; 8-ER-1450:5-1451:4.) Lyndon previously received a complaint of discrimination from a candidate about an unrelated company, which he reported. (4-ER-580 ¶57; 8-ER-1450:5-1451:4.) Lyndon testified that if he had received a complaint about PPG or believed that any candidate was being treated in a discriminatory manner, he would have reported it to the human resources department immediately. (4-ER-581 ¶58; 8-ER-1450:5-1451:4.)

### 3. PPG Sought to Hire Two Sealants Team Leaders at its Facility in Mojave, California.

PPG operates a facility in Mojave, California that manufactures specialized coatings and sealants for the aerospace industry. (4-ER-531 ¶1; 8-ER-1419 ¶2.) In September 2018, PPG developed a hiring need for two Sealants Team Leaders to work in the Mojave facility. (4-ER-532 ¶3; 8-ER-1427 ¶2.)

#### a. The Job Requirements and Qualifications.

Sealants Team Leaders lead the production activities of the Sealant cell, a team of twenty-one or more employees manufacturing sealants for military and

commercial aircraft. (4-ER-534 ¶4; 8-ER-1427 ¶4.) The Sealants Team Leaders implement the production schedule, communicate production demands to the team, and coordinate and monitor production activity. (4-ER-535 ¶5; 8-ER-1427 ¶2.)

The job description specifies requirements for the role, including effective communication skills, an understanding of safety regulations, and an ability to focus on results. (4-ER-535 ¶6; 8-ER-1427 ¶2.) PPG's ideal candidate has direct experience manufacturing polymers, coatings, and sealants. (8-ER-1429 ¶¶14-15, 1431.) Sealants Team Leaders must understand the process to troubleshoot issues, on the spot, as they arise during a shift. (4-ER-532 ¶3; 8-ER-1427 ¶2, 1431.) Specifically, the job requires an "[u]nderstanding of customer requirements, … equipment operation, production processes, [and] product technology ..." (4-ER-532 ¶3; 8-ER-1427 ¶2, 1431.)

### b. PPG Posted the Job Opening Online and Used a Third-Party Recruiter to Identify Candidates.

PPG posted the position online resulting in about 60 applicants for the two openings. (6-ER-1095-1116.) PPG also engaged Lyndon, a third-party recruiter, to identify potential candidates for the job. (4-ER-536 ¶7; 8-ER-1427 ¶3.) Lyndon has been a recruiter for over 20 years and has worked with PPG in the past to help fulfill its hiring needs. (4-ER-537 ¶8; 8-ER-1436 ¶4, 1443:24-1444:7.) Lyndon was not involved in the decision-making process for any candidate nor was he an employee or agent of PPG. (4-ER-537 ¶9; 8-ER-1442:14-1443:1.)

Lyndon's role was simply to identify and screen candidates that he felt met the basic criteria for the role and send their resumes to PPG's hiring manager, Sebold. (4-ER-538 ¶10; 8-ER-1442:14-1443:1.) Lyndon would receive a placement fee for successfully placing a candidate in a role. (4-ER-539 ¶11; 8-ER-1444:11-16.) Under this arrangement, Lyndon searched for and screened potential candidates and sent their resumes to Sebold via email for consideration. (4-ER-540 ¶12; 8-ER-1442:14-1443:1.)

### c. Robinson, a Senior-Level Production Manager in Washington, was Overqualified for the Entry-Level Sealant Team Leader Position.

On October 4, 2018, Lyndon sent Sebold an email attaching Robinson's resume along with a message that Robinson was "just laid off and is currently living in Washington State." (4-ER-540 ¶13; 8-ER-1470.) Lyndon said Robinson "is very experienced, his last role was a Production Manager with 50+ team members" and is interested in the position because "he likes that PPG would have growth potential." (4-ER-541 ¶14; 8-ER-1470.)

In response, Sebold questioned why a senior-level Production Manager in Washington would be interested in relocating to the Mojave Desert to apply for an entry-level supervisor position, which would be a significant step-down. (4-ER-541 ¶15; 8-ER-1427 ¶4.) Based on Robinson's background and his interest in "growth potential," Sebold was concerned that Robinson would find the role unfulfilling and

seek to promote out of it quickly or find another job. (4-ER-542 ¶16; 8-ER-1470, 1427 ¶5, 1444:20-1447:19.)

PPG was interested in hiring a candidate who would stay content in the role and not use it as a stepping-stone to another job, which would require PPG to hire and train someone else. (4-ER-542 ¶17; 8-ER-1427 ¶5.) And, importantly, Robinson did not have any relevant experience with manufacturing coatings and sealants nor any experience in the aerospace industry. (5-ER-679 ¶5, 690-694.)

> **d.      Sebold Conducted Telephonic Screening Interviews with External Candidates Presented by the Recruiter, Including Robinson.**

Telephonic screening interviews were set up for ten of Lyndon's external candidates to narrow the pool down to two of whom would be invited to interview in-person with Sebold and others at the Mojave facility. (4-ER-543 ¶18, 544 ¶19; 8-ER-1427 ¶6.) Sebold had some hesitations about Robinson's candidacy because his background was primarily in management, and he had no experience manufacturing coatings and sealants or supervising that process. (4-ER-548 ¶25; 8-ER-1427 ¶8, 1464, 1478:3-14.) Nonetheless, Sebold set up a screening interview with Robinson. (4-ER-544 ¶20; 8-ER-1427 ¶6.)

> **(1)      Robinson Performed Average During the Screening Interview.**

On October 10, 2018, Sebold conducted a thirty-minute telephonic screening

interview with Robinson. (4-ER-545 ¶21; 8-ER-1428 ¶7.) Sebold asked the same questions of all candidates using a pre-written script. (4-ER-546 ¶22; 8-ER-1428 ¶7.) Sebold graded Robinson's performance using an interview assessment form so that all candidates were graded using the same criteria, which corresponded with the job requirements. (4-ER-546 ¶23; 8-ER-1428 ¶7.)

Sebold graded Robinson a B+ for Safety, a B+ for Communication, and a B- for ability to focus on results—all three of which were requirements for the job. (4-ER-548 ¶25; 8-ER-1428 ¶8, 1464, 1478:3-14.) In addition, Robinson did not have relevant experience manufacturing coatings and sealants. (4-ER-548 ¶25; 8-ER-1428 ¶8, 1464, 1478:3-14.) And, based on Robinson's background as a senior manager, Sebold believed that, even if hired, Robinson would be unsatisfied with the role and, was less likely to stay in the position very long if offered the job. (4-ER-549 ¶26; 8-ER-1427 ¶¶4-5, 1447:20-1448:18.)

Ultimately, PPG decided not to move forward with Robinson's candidacy and instead conducted in-person interviews with two other candidates proposed by the recruiter. (4-ER-550 ¶27; 8-ER-1428 ¶10.) PPG does not know the ages of the two external candidates invited for in-person interviews because PPG does not inquire into the age of candidates. (4-ER-551 ¶28; 8-ER-1428 ¶10.) Based on Sebold's assessment, the two external candidates who were selected for an in-person

interview performed better during their telephonic screening interviews and appeared to be a better potential fit for the role. (4-ER-554 ¶29; 8-ER-1428 ¶10.)

> ### (2) Lyndon Emailed Robinson Stating PPG is Concerned He Is "Too Senior" – i.e., "Overqualified" - for the Job.

When Lyndon asked about Robinson's candidacy, Sebold expressed that he was concerned about Robinson's overqualification given his prior work experience and responsibilities. (4-ER-555 ¶30; 8-ER-1448:19-1449:21.) In relaying this to Robinson via email, Lyndon wrote: "I spoke to the manager on Friday he is concerned about you being too senior for the role." (4-ER-556 ¶31; 8-ER-1471.) Contrary to Robinson's assertion otherwise, there is no evidence that Sebold used the phrase "too senior," but both agree that, regardless of the verbiage used, the discussion had nothing to do with Robinson's age. (4-ER-558 ¶32; 8-ER-1428 ¶11, 1448:19-1449:21.)

As Sebold explained, his concern was that Robinson was overqualified for the job:

> I do not recall using the words 'too senior' when expressing my concerns to Lyndon that Robinson would be overqualified for the role. In this context, I would not interpret that comment as having anything to do with age. It is a figure of speech that referred only to Robinson's seniority in experience and prior positions held.

(8-ER-1428 ¶11.)

Lyndon agreed, testifying:

- 20 -

Q:     … I want to use the phrase that was actually used by Mr. Sebold. And he chose those words. Correct?

A:     I actually don't recall if he used the words too senior.

Q:     But basically that's - - I mean, you're not - - you're basically relaying information that you're getting from the manager to your candidate. Correct?

A:     Yes. But I would use too senior and overqualified interchangeably. So I don't recall what Mr. Sebold's phrase was.

Q:     Okay. You think you're the one that interposed the word too senior?

A:     There's a possibility that I used too senior instead of overqualified.

Q:     But if Mr. Sebold had told you Elwyn was overqualified, you would have just relayed that information to Mr. Robinson, right, that they just said you're overqualified?

A:     It's a figure of speech.

Q:     I get it. But you're just going to - - you're basically paring what you're hearing. Correct? I mean, if you hear something specific, if you get an answer from someone, you're going to pair it what they told you, correct, generally speaking?

A:    No. I think that's a false assumption, because actually if they had - - if he had inferred to me that he was too old, I would have actually notified HR.

(8-ER-1448:19-1449:21.)

In response to Lyndon's email, Robinson wrote, "I understand. I believe being too senior is the battle I am having everywhere I interview. If they are looking for someone who will be around for 20 years, I am not that guy as I am now 60 years old." (4-ER-559 ¶33; 8-ER-1471.) This was the first time Robinson disclosed his age to Lyndon unsolicited and it was after PPG had already made the decision not to interview him in-person. (4-ER-559 ¶34; 8-ER-1428 ¶10, 1470.)

### e.    PPG Learned Robinson's Age for the First Time After It Had Already Made the Decision Not to Hire Him.

The following week, Lyndon emailed Sebold: "Elwyn had asked for an update so I let him know there were some concerns about him being too senior. He replied that he understood. He also informed me that he is 60 years old. I don't think you have to worry about him wanting to advance or being restless." (4-ER-560 ¶35; 8-ER-1470.) This was the first time Lyndon—or anyone—disclosed Robinson's age to Sebold or PPG. (4-ER-560 ¶35; 8-ER-1470.) But, by then Sebold had already decided not to further consider Robinson for the job. (4-ER-561 ¶36; 8-ER-1428-1429 ¶¶10, 12.) Sebold told Lyndon that PPG had made the decision to bring in the other two candidates for in-person interviews. (4-ER-562 ¶37; 8-ER-1429 ¶12.) In

- 22 -

addition, PPG was considering approximately 60 direct applications, which included candidates who were current PPG employees with relevant experience. (4-ER-564 ¶41; 8-ER-1429 ¶13.)

Until that point, Sebold did not know Robinson's age or even his approximate age. (4-ER-563 ¶38; 8-ER-1428-1429 ¶¶10, 12.) Robinson's age was not discernable from his resume since he had an unusually long gap in completing his education such that his college graduation year was indicative of someone much younger. (4-ER-563 ¶39; Sebold ¶7, 8-ER-1465-1469.) And, Sebold never saw Robinson because the interview was conducted over the phone. (4-ER-564 ¶40; 8-ER-1457:6-12.) Sebold never asked Robinson's age during the interview nor was he interested in finding it out because age was not a factor in the decision-making process. (8-ER-1428 ¶7.)

### f. PPG Hired Two Internal PPG Candidates for the Sealants Team Leader Positions.

PPG received applications from two current PPG employees, Kyle Kathary and Octavio DeRobles, through its direct posting. (4-ER-565 ¶42; 8-ER-1429 ¶13.) Both interviewed with Sebold, Dean Arnold, and PPG's Environmental Health and Safety Manager. (4-ER-566 ¶43; 8-ER-1429 ¶13.) Kathary and DeRobles performed well during their interviews and exhibited all the requirements for the role. (4-ER-567 ¶44; 8-ER-1429 ¶14.) This was unsurprising given that both Kathary and

- 23 -

DeRobles had gained direct experience working for PPG. (4-ER-569 ¶45; 8-ER-1429 ¶14.)

Kathary was a production worker in the same sealant unit who had been trained by PPG as a "step-up" supervisor and had been performing the duties of this exact Sealants Team Leader at the time but without the title. (4-ER-570 ¶¶46, 65; 8-ER-1429 ¶14.) DeRobles had previously held this exact Sealants Team Leader position and was interested in returning to the position after working for several years as a production worker. (4-ER-570 ¶47, 585 ¶65; 8-ER-1429 ¶14.)

Given their direct, hands-on familiarity with PPG and the sealants and coatings manufacturing process, both internal candidates were extremely well qualified and better suited for the role than any of the external candidates, including Robinson, who lacked any of that experience. (4-ER-572 ¶48, 584-585 ¶¶64-65; 8-ER-1429 ¶15; 8-ER-1481-1488.) Ultimately, Kathary and DeRobles were promoted by PPG to the Sealants Team Leader positions. (4-ER-573 ¶49; 8-ER-1420 ¶5, 1429 ¶15.)

## V.    SUMMARY OF ARGUMENT

The District Court correctly entered an order finding Sebold was a sham defendant and denying Robinson's motion to remand. (1-ER-36-44.) In so doing, the District Court properly found Robinson's sole allegation of harassment against Sebold - not hiring him because he was "too old" - was the kind of action that is

necessary to business and personnel management. (*Id.* citing *See Reno v. Baird,* 18 Cal.4th 640, 646, (1998).) Consequently, as the District Court reasoned "if Sebold decided to not hire Robinson because he was 'too old' the remedy provided by FEHA is for discrimination against the employer, not harassment against an employee. *See Janksen,* 46 Cal.App.4th at 80 (holding '[i]f personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination')." (1-ER-43.) According to the alleged facts in the Complaint, the District Court properly found that Sebold is a sham defendant because Robinson cannot establish that he committed harassment pursuant to the FEHA. (1-ER-43.)

Similarly, the undisputed evidence in the record supports the District Court's determination that PPG is a citizen of Pennsylvania for purposes of diversity jurisdiction. (1-ER-39-44) and Robinson has failed to show any definite and firm conviction that a mistake was committed. (*Concrete Pipe & Products of Calif., Inc. v. Construction Laborers Pension Trust for Southern Calif.,* 508 U.S. 602, 622; *Husain v. Olympic Airways,* 316 F.3d 829, 835 (9th Cir. 2022), aff'd 540 U.S. 644 (2004).) Indeed, Robinson proffered the same argument made here that PPG's aerospace division's headquarters is somehow PPG's headquarters to the District Court premised on similar irrelevant evidence. (1-EOR-39:9-18.) The District Court rejected the argument finding "[b]ased on all of the information provided by both parties, the Court finds that PPG's nerve center is located in Pittsburgh,

Pennsylvania." (1-EOR-40:7-8.) Thus, the District Court correctly denied Robinson's motion to remand based upon its diversity of citizenship analysis. (28 U.S.C. § 1332(c).)

Moreover, the District Court properly granted summary judgment as to Robinson's claims for age discrimination, retaliation, harassment, failure to prevent and for punitive damages. (1-ER-4-28.) A review of the record on appeal establishes that Robinson presented no evidence – nor does any evidence exist – to meet his burden of proof to substantiate his claims. To the contrary, Robinson's entire action is premised on the falsehood that Sebold himself said Robinson was "too senior" for the job and from this Sebold meant he was "too old." Yet, the undisputed evidence in the record is that Sebold did not use the words "too senior" and, even if he did, it is undisputed that he meant Robinson was overqualified for the job, not that he was "too old" as alleged without any evidentiary support. (8-ER-1428 ¶11, 1448:19-1449:21.) In sum, as detailed below, all of Robinson's causes of action are legally deficient. Thus, the District Court's order granting summary judgment was proper and the judgment should be affirmed.

Likewise, the District Court did not abuse its discretion when it extended the briefing schedule on the summary judgment motion multiple times allowing Robinson almost ten weeks to oppose it. Nor did the District Court abuse its discretion when it struck Robinson's "Corrected Separate Statement" filed after

PPG's reply brief and disregarded Robinson's late opposition which it nevertheless considered in granting summary judgment. These decisions by the District Court were not beyond the pale of reasonable justification under the circumstances. (*Boyd v. City & County of San Francisco,* 576 F.3d 938, 943 (9th Cir. 2009); *Harman v. Apfel,* 211 F.3d 1172, 1175 (9th Cir. 2000).) To the contrary, the decisions were within the District Court's discretion which it properly exercised.

## VI.   STANDARD OF REVIEW

An order granting or denying summary judgment generally is reviewed *de novo*. (*Jones v. Royal Admin. Services, Inc.,* 887 F.3d 443, 447 (9th Cir. 2018); *Guerin v. Winston Indus., Inc.,* 316 F.3d 879, 882 (9th Cir. 2002); *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1124 (9th Cir. 2002).) Similarly, a remand order based on jurisdictional grounds is reviewed *de novo*. (*Allen v. Boeing Co.,* 821 F.3d 1111, 1116 (9th Cir. 2016); *Lively v. Wild Oats Markets, Inc.,* 456 F.3d 933, 938 (9th Cir. 2006); *Briggs v. Merck Sharp & Dohme,* 796 F.3d 1028, 1047 (9th Cir. 2015).)

However, factual findings underlying the district court's jurisdictional decision are reviewed under the *clearly erroneous* standard. (*Young v. United States,* 769 F.3d 1047, 1052 (9th Cir. 2014); *Association of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.,* 280 F.3d 901, 904 (9th Cir. 2022); *United States v. Hughes Aircraft Co.,* 162 F.3d 1027, 1030 (9th Cir. 1998).) Under the clearly erroneous standard, the Ninth Circuit must accept a district court's factual finding unless it has

a "definite and firm conviction that a mistake has been committed." (*Concrete Pipe & Products of Calif.,* 508 U.S. at 622; *Husain,* 316 F.3d at 835.)

The abuse of discretion standard generally applies upon review of a district court's denial of an application made pursuant to Federal Rules of Civil Procedure section 56(d) to continue a hearing on a summary judgment motion to permit discovery. (*InteliClear, LLC v. ETC Global Holdings, Inc.,* 978 F.3d 653, 661 (9th Cir. 2020); *United States Cellular Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 934 (9th Cir. 2002).) Likewise, the abuse of discretion standard applies to the district court's decision to strike or disregard late filings. (*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991); *America United for Kids v. Rousseau,* 985 F.3d 1075, 1087 (9th Cir. 2021).) An abuse of discretion will be found only if the appellate court is firmly convinced that "the reviewed decision lies beyond the pale of reasonable justification under the circumstances." (*Boyd,* 576 F.3d at 943; *Harman,* 211 F.3d at 1175.)

## VII.  LEGAL ARGUMENT

### A.  THE DISTRICT COURT HAD JURISDICTIONAL AUTHORITY TO ENTER JUDGMENT BECAUSE IT PROPERLY DIMISSED SEBOLD AND DENIED ROBINSON'S MOTION TO REMAND BASED ON DIVERSITY JURISDICTION.

Federal courts have subject matter jurisdiction as authorized by the Constitution and Congress. (U.S. Const. Art. III, § 2, cl. 1; *see also Kokkonen v.*

*Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).) A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. (28 U.S.C. § 144(a).) Federal courts have original jurisdiction where an action arises under federal law (28 U.S.C. § 1331), or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332(a)).

Before the District Court, it was undisputed that Robinson is a citizen of California. (1-EOR-39:5-6.) Thus, "the [District] Court finds that Robinson is a citizen of California for diversity purposes." (1-EOR-39:6-7.) Moreover, both PPG and Robinson agree that PPG is a Pennsylvania corporation. (1-EOR-39:9; Motion Ex. 5, p. 25, *See AOB Caption*.) In so conceding, however, Robinson argued before the District Court that PPG's "principal place of business is in Glendale, California." (1-EOR-39:9-10.) Interestingly, before this Court Robinson has abandoned this argument, claiming instead based on similarly rejected evidence in the District Court offered for the first time on appeal that PPG's "aerospace operations" are in Sylmar, California. (AOB 41-42; Motion 2-3, 5.)

In this regard, without any legal support, Robinson attempts to conflate the location of PPG's "Aerospace operations" with the location of PPG's corporate headquarters. Yet, Robinson's contention as to the location of "PPG's Aerospace operations" does nothing to contradict that PPG's principal executive office is in

Pittsburgh, Pennsylvania. Specifically, for the first time on appeal, Robinson attempts to add deposition testimony from PPG's Person Most Knowledgeable for hiring practices (Motion Exhibit 1, p. 8:15-17), which only discusses the headquarters for aerospace, not PPG's principal executive office:

Q:     But for aerospace - - aerospace - - what areas geographic is aerospace - -

A:     The corporate headquarters is in Sylmar, California. But we have employees all across the globe.

(Motion Exhibit 1, 9:6-10.)

Next, Robinson tries to rely on three purported printouts from PPG Aerospace's website which were not offered in the District Court and state that "PPG Aerospace Corporate Office" is located in Sylmar, California. (Motion Exhibits 2-4.) Yet, these purported web pages do nothing to contradict that PPG's principal executive offices are in Pittsburgh, Pennsylvania. (Motion Exhibits 2-4.) Then, Robinson cites PPG's Form 10-K, again offered for the first time on appeal, which establishes that PPG's principal executive office is in Pittsburgh, Pennsylvania. (Motion Exhibit 5 p. 25.) Lastly, Robinson attempts to add three press releases from 2006, 2010, and 2000 – which were not offered in the District Court - which discuss PPG's acquisition of various entities and that it earned the Gulfstream 2009 Supplier of the Year Award. (Motion Exhibits 6-8.) Regardless, even if considered, none of

the material Robinson is attempting to add to the record contradicts that PPG's principal executive office is in Pittsburgh, Pennsylvania.

    **1.**    **For Purposes of Diversity Jurisdiction, the Question is Not Where PPG's Aerospace Operations are Located but Where PPG Has its Principal Place of Business.**

For purposes of diversity jurisdiction, the question is not where PPG's aerospace operations are "headquartered" as purported without any legal support by Robinson. The question is where PPG has its principal place of business. (28 U.S.C. § 1332(c).) Under Section 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State where it has its principal place of business." (28 U.S.C. § 1332(c).) The "nerve center" test is used to determine where a corporation's principal place of business is located. (*Hertz Corp. v. Friend,* 559 U.S. 77, 78 (2010).) The "nerve center" is where the corporation's officers direct, control, and coordinate corporate activities, ordinarily where it maintains its headquarters. (*Id.* at 90, 93.)

Although the location in California has now changed, before the District Court Robinson argued similarly that "PPG acquired Courtaulds, located in Glendale, California, in 2000 for $512.5 million …" (1-EOR-39:13-15; 14-ER-3013 ¶3.) Robinson's counsel then went on to declare, "[t]he foregoing information, *which admittedly does not constitute evidence,* serves to place doubt on defense counsel's unsupported and conclusory statement that PPG's 'nerve center' and thus its

- 31 -

principal place of business is in Pittsburg[h], Pennsylvania." (1-EOR-39:15-18; 14-ER-3013 ¶3, emphasis added.)

However, PPG's evidence is anything but "unsupported and conclusory." Quite the opposite, PPG provided specific and uncontroverted facts supporting the District Court's correct determination that PPG's "nerve center" is in Pittsburgh, Pennsylvania. (1-EOR-39:22-24; 14-ER-2994-2996.) As the District Court detailed:

> Gordon states that PPG has several headquarters across the world, but its global headquarters is in Pittsburgh, Pennsylvania. (Gordon Decl. ¶ 4.) Further Gordon states that, 'PPG's primary administrative and financial offices, including human resources, benefits and payroll are located in the Commonwealth of Pennsylvania, and a substantial majority of the corporate decisions including operational, executive and administrative policy are all made at its headquarters.' (Gordon Decl. ¶ 4.) Gordon states the majority of PPG's corporate officers including the Chief Executive Officer, Senior Vice President, and Chief Financial Officer all maintain offices at the headquarters in Pittsburgh. (Gordon Decl. ¶ 7.) The annual meeting of shareholders is held in Pittsburgh, Pennsylvania. (Gordon Decl. ¶ 9.)

(1-EOR-39:22- 40:6; *see also* 14-ER-2994-2996.)

Robinson now attempts to add material which was not introduced in the District Court as to PPG's "aerospace operations." (Motion p. 2.) This material, however, is irrelevant to PPG's principal place of business, which is located at its "nerve center" in Pittsburgh, Pennsylvania.

As the District Court correctly reasoned:

> Based on all of the information provided by both parties,

- 32 -

> the Court finds that PPG's nerve center is located in Pittsburgh, Pennsylvania …
>
> Here, several corporate officers, including the CEO, work out of the Pittsburgh headquarters. (Gordon Decl. ¶ 7.) The annual shareholders meeting is in Pittsburgh. (Gordon Decl. ¶ 9.) Furthermore, Flynn's declaration concedes that PPG's corporate headquarters, registered with the State of California, is in Pittsburgh, Pennsylvania. (Gordon Decl. ¶ 2.) The purchase of Courtaulds, almost twenty years ago, does not cast any doubt that PPG's nerve center remains in Pittsburgh, Pennsylvania. *See In re Hydroxycut Mktg. & Sales Practices Litig.,* No. 09MD2087-BTM(AJB), 2010 WL 2998855, at \*2 (S.D. Cal. July 29, 2010) (finding that the company nerve center was in Ontario, Canada despite the presence of a large New Yor facility because high level executive decisions were made in Ontario, Canada). Therefore, the Court finds that PPG is a citizen of Pennsylvania.

(1-EOR-40:7-25; *see also* 14-ER-2994-2996.)

This Ninth Circuit must accept the District Court's factual finding that PPG's principal place of business is in Pennsylvania since that determination is supported by the uncontroverted evidence in the record. (*Concrete Pipe & Products of Calif., Inc.,* 508 U.S. at 622; *Husain,* 316 F.3d at 835.)

### 2. The District Court Properly Found the Amount in Controversy Exceeds $75,000.

Robinson purports without any citation to the record that the District Court's order is in error because it did not require evidentiary submissions "*after Appellant indicated that Robinson contested the Appellee contention that the amount in controversy was sufficient relative to the $75,000 jurisdictional threshold.*" (AOB

51, emphasis added.) Here, however, the very foundation of Robinson's assertion of error fails because Robinson's motion to remand is devoid of any argument that the amount in controversy does not exceed $75,000. (14-ER-2997-3040.) In response, PPG notes that "Plaintiff does not dispute the amount in controversy exceeds $75,000." (14-ER-2982:26-27.) Instead, as the District Court explained, Robinson did not raise the question of the amount in controversy until his reply brief. (1-ER-44.)

The amount in controversy in a diversity action is determined from the allegations or prayer of the complaint. (*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).) Here, Robinson alleged in his Complaint that the amount in controversy is "an aggregate amount not less than $2 million." (14-ER-3033 ¶9.) Based on this, in its notice of removal PPG asserted that the Complaint affirmatively places the amount in controversy greater than $75,000. (15-ER-3056:3-20.) In his moving papers on remand, Robinson does not raise the amount in controversy. (14-ER-2999-3009.) It was not until Robinson filed his reply brief that – without any evidentiary support – Robinson questions the value of his claims purporting that "Plaintiff's complaint seeks damages of not less than $2,000,000. However, that amount is highly questionable … This … foregoing amount is doubtful and uncertain …" (14-ER-2972:13-27.) In so arguing, Robinson never affirms that the amount in controversy is less than $75,000. Here, the District Court properly determined that

the amount in controversy as alleged exceeds $75,000.

### 3. The District Court Properly Found that Sebold Was a Sham Defendant.

Robinson next presents the fallacy that Sebold should not have been dismissed because he was not a sham defendant. Removal based on a court's diversity jurisdiction is proper, despite the presence of a non-diverse defendant, where that defendant is fraudulently joined, or a "sham defendant." (*Caterpillar*, *Inc*., *v. Lewis,* 519 U.S. 61, 68 (1996).) Under the fraudulent joinder doctrine, federal courts may properly disregard a non-diverse defendant if it is determined that the party's joinder is a "sham," such that "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." (*Briano v. Conseco Life Ins. Co.*, 126 F.Supp.2d 1293, 1296 (C.D. Cal. 2000); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).)

Importantly, the court's review is confined to the facts alleged in plaintiff's complaint; it does not extend to facts plaintiff *could* allege in his moving papers or in an amended complaint. (*Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989).) Here, the allegations in Robinson's Complaint establish he cannot assert a viable claim against Sebold.

### a. The District Court Properly Determined Sebold Was a Sham Defendant.

Initially, Robinson chastises the District Court for purportedly dismissing Sebold "as a result of Appellant's 'Scrivener's error' pleading deficiency[.]" (AOB 42.) Yet, this is a complete misrepresentation of the District Court's order which states: "Even if the Court determines omitting Sebold in the heading of the third cause of action is a Scrivener's error, Robinson fails to establish that Sebold can be held liable for harassment. (*See* Compl. ¶¶ 50-56.)" (1-ER-42.) The District Court then provides a detailed analysis under the clear and convincing standard properly finding that Sebold was fraudulently joined. (1-ER-41 citing *Hamilton Materials, Inc. v. Dow Chem. Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007).)

In this regard, the FEHA makes it unlawful for "an employer … or any other person to harass an employee because of age …" (Gov't Code § 12940(j)(1).) To state a claim for harassment against Sebold, Robinson must establish: (1) he was subjected to unwanted harassing conduct by Sebold; (2) the harassment was based on his age; and (3) the harassing conduct was severe or pervasive. (*Fisher v. San Pedro Peninsula Hosp.,* 214 Cal.App.3d 590, 608 (1989).) "[A]cts of harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or generalized nature." (*Id.* at 610.)

The "severe or pervasive" standard is necessary to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing." (*Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998); *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457 (1998) (racial remarks made to a stock room worker every day for six weeks not severe and pervasive conduct).) Only for very severe cases will an isolated incident amount to harassment. (*Herberg v. California Institute of the Arts*, 101 Cal.App.4th 142, 151 (2002) ("review of the cases they cite reveals that such a single incident must be severe in the extreme and generally must include either physical violence or the threat thereof.")

In the employment context, courts in the Ninth Circuit have found fraudulent joinder and denied remand where the employee's complaint alleges no actionable conduct constituting harassment by the employee's supervisor. (*Tipton v. Airport Terminal Services*, 2019 WL 185687, at *7 (C.D. Cal. Jan. 14, 2019) (denying plaintiff's motion for remand based on fraudulent joinder of supervisor on harassment claim under FEHA and observing that "assuming [supervisor] did engage in any severe or pervasive conduct, Plaintiff must still identify facts showing as much."); *McBroom v. Wal-Mart Stores, Inc.*, 2016 WL 3549606, at *4-5 (E.D. Cal. June 30, 2016), at *4-5 (denying motion to remand where manager was fraudulently joined in disability-based harassment lawsuit and factual allegations in

complaint were not sufficiently severe or pervasive to state viable harassment claim).)

Here, the allegations in Robinson's Complaint against Sebold do not fall within the meaning of harassment as a matter of law. Robinson's only allegation against Sebold is that after Robinson had a 30-minute telephonic interview with Sebold – an interview Robinson admits "concluded on cordial and favorable terms" - Sebold informed the recruiter that Robinson was too old for the position, and then the recruiter told Robinson, "PPG did decide you were too senior [for the job.]" (14-ER-3023-3024 ¶¶15, 17-18.) Even if true, the one incident Robinson alleges against Sebold is an isolated, non-extreme comment made indirectly to Lydon that Robinson was "too senior for the role." (14-ER-3024 ¶18.)

This is not actionable harassment. (*Faragher,* 524 U.S. at 788 ("simple teasing … offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" giving rise to a workplace harassment claim); *Herberg,* 101 Cal.App.4th at 151 (to justify a harassment claim, a single incident must be "severe in the extreme and generally must include either physical violence or the threat thereof").

In his brief, Robinson conflates his claims of discrimination and harassment. However, California law distinguishes between discriminatory employment actions and harassment. Discriminatory conduct arises out of actions that are inherently

- 38 -

necessary to perform a supervisor's job whereas harassment arises out of conduct that is outside the scope of necessary job performance, and is "presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (*Jones v. Lodge at Torrey Pines P'ship,* 42 Cal.4th 1158, 1164 (2008) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 63 (1996).)

*Janken,* relied on by the District Court in correctly determining Sebold was a sham defendant, is instructive. (1-ER-42.) In *Janken*, plaintiffs named two corporate entities and their supervisory employees as individual defendants, asserting claims against the individual defendants for age discrimination and intentional infliction of emotional distress. (*Janken,* 46 Cal.App.4th at 61.) The *Janken* Court explicitly analyzed the difference between harassment and discrimination and clarified the circumstances when a supervisory employee is at risk of personal liability for personnel management decisions. (*Id.*) The Court reasoned that "[m]aking a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment[,]" and is generally *unactionable*:

> [T]he Legislature intended that commonly necessary personnel management actions such as *hiring and firing, ... do not come within the meaning of harassment.* These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to

- 39 -

> business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

(*Id.* at 64-65, emphasis added.)

Even if Sebold was the decision maker and decided not to hire Robinson because of his age as alleged in the Complaint, such a decision is not harassment, but an unactionable personnel management action for which there is no individual liability. (*Id.*, at 64-65; *Reno,* 18 Cal.4th at 645-646; *Cofer v. Parker-Hannifin Corp.*, 194 F.Supp.3d 1014, 1021 (C.D. Cal. July 8, 2016) (finding that "[plaintiff's] allegations exclusively concern the plaintiff's failure to be promoted, promotion of others as opposed to him, failure to be included in meetings and trainings, and ultimate termination" were "straight forward adverse employment actions … absent something more, they do not state a claim for harassment").)

As the District Court properly found:

> [I]f Sebold decided to not hire Robinson because he was 'too old' the remedy provided by FEHA is for discrimination against the employer, not harassment against the employee … According to the alleged facts in the complaint, Robinson cannot establish that Sebold committed harassment pursuant to the FEHA, therefore, the Court finds Sebold is a sham defendant.

(1-ER-43.)

### b. The Cases Cited by Robinson Are Distinguishable.

Robinson's reliance on *Roby v. McKesson Corp.,* 47 Cal.4th 686 (2010) ("*Roby*") and *Dee v. Vintage Petroleum, Inc.,* 106 Cal.App.4th 30 (2003) ("*Dee*") do nothing to change this result. In *Roby,* the California Supreme Court found "that some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message. *This occurs when the actions establish a widespread pattern of bias.*" (*Id.* at 709 citing *Miller v. Department of Corrections,* 36 Cal.4th 446 (2005), emphasis added.) In *Roby*, the California Supreme Court determined the jury's finding of a pervasive and widespread pattern of bias based on a supervisor's hostility toward plaintiff who suffered from panic disorder and body odor caused by medication which effectively changed the conditions of employment was supported by substantial evidence including some which could be characterized as "official employment actions rather than hostile social interactions in the workplace." (*Id.* at 709.) These actions included the supervisor's rude comments and behavior on a daily basis, supervisor's shunning of employee during weekly staff meetings, supervisor's belittling of employee's job, and supervisor's reprimands of employee in front of coworkers. (*Id.*)

In so doing, the California Supreme Court specifically instructed "[t]he critical inquiry when a court is deciding whether the evidence is sufficient to uphold a verdict finding both discrimination and harassment is whether the evidence

indicates violations of both FEHA prohibitions …" (*Id.* at 709.) Here, in contrast to *Roby,* Robinson's allegations of purported harassment by Sebold are not legally sufficient under the FEHA. On its face, the Complaint does not allege a pervasive widespread pattern of bias by Sebold toward Robinson. Quite the opposite, Robinson merely alleges Sebold made an isolated, indirect remark to a third-party that Robinson was "too senior [for the job]." This is woefully deficient to legally support any claim of harassment against Sebold.

Aside from being non-binding authority, the holding in *Dee* is likewise factually and legally distinguishable. The plaintiff in *Dee* alleged her supervisor asked her to lie about company business, asked her to secretly take a document from the desk of another supervisor, insulted her by calling her a "bitch", used profanity in her presence, and on one occasion, made a racial epithet towards plaintiff by commenting, "it is your Filipino understanding versus mine". (*Dee,* 106 Cal.App.4th at 33-34.) After the trial court granted summary judgment, the court of appeal reversed holding a reasonable inference was that plaintiff's supervisor wished to intimidate her, and "[a] reasonable trier of fact could infer that the racial slur was not an isolated event because it explained [the supervisor's] motivation for creating an abusive working environment for Dee." (*Id.* at 36-37.)

*Dee* is easily distinguishable because *Dee* involved a pattern of harassing conduct by plaintiff's supervisor directly against plaintiff, including a racial epithet,

which a trier of fact could find were made outside the scope of job duties which are not of a type necessary to personnel management. Whereas, here, Robinson merely alleges Sebold made an isolated, indirect remark that Robinson was "too senior [for the job]." Notably, Robinson fails to cite a single case where the alleged harassing conduct was a single statement made to a third party during a hiring or firing decision directly related to personnel management. Instead, Robinson's failure to attribute any specific conduct to Sebold mirrors the same deficiencies that plagued the complaints in *Tipton* and *McBroom*, where the courts applied the fraudulent joinder doctrine to deny remand based on the plaintiffs' demonstrated failure to identify any actionable conduct by their supervisors. (*See Tipton*, 2019 WL 185687, at *5-7; *McBroom*, 2016 WL 3549606, at *4-5.)

Here, the District Court's order determining that Sebold was a sham defendant and dismissing him with prejudice from the action was proper and should be upheld. It necessarily follows that the District Court correctly determined diversity of citizenship based on the remaining parties: Robinson, an undisputed citizen of California, and PPG, a citizen of Pennsylvania as supported by the undisputed evidence. Thus, the District Court's order denying remand should be affirmed.

## B. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

- 43 -

matter of law." (Fed. R. Civ. P. 56(a).) A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).) Here, as detailed below, the District Court properly found that "Robinson fails to raise any triable issue[]" resulting in its grant of summary judgment which should be upheld on appeal.

**1.  The District Court Properly Granted Summary Judgment on Robinson's Age Discrimination Claim.**

Discrimination claims in California are analyzed under a three-stage burden-shifting test. (*Guz. Bechtel Nat. Inc.,* 24 Cal.4th 317, 354 (2000) citing *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).) Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. (*Id*.) If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. (*Id*. at 356.) Thereafter, the burden shifts back to the plaintiff to demonstrate the defendant's reason for the adverse employment decision was a pretext for another, discriminatory motive. (*Id.* at 356.) The plaintiff has the ultimate obligation of proving not just that the proffered reason is false, but that the reason for the adverse employment action was discrimination. (*Hersant v. Dep't of Soc. Servs*., 57 Cal.App.4th 997, 1003 (1997).)

If the plaintiff fails to establish a prima facie case, or fails to present sufficient proof of pretext and/or discrimination, the employer is entitled to summary judgment. (*Martin v. Lockheed Missiles & Space Co*., 29 Cal.App.4th 1718, 1734-35 (1994).) Here, the District Court properly granted summary judgment first finding Robinson failed to establish a prima facie case because there was no direct evidence of age discrimination and, further finding that PPG proffered evidence showing a legitimate reason for its employment decisions to which Robinson "fail[ed] to raise a triable issue." (1-ER-14-23.)

### a.    Robinson Cannot Establish a Prima Facie Case of Age Discrimination.

As the District Court properly recognized, courts should not apply the burden-shifting framework when the plaintiff has direct evidence of discrimination or retaliation. (1-ER-16 citing *Morgan v. Regents of University of California,* 88 Cal.App.4th 62, 67 (2000).) "Direct evidence is evidence which proves a fact without inference or presumption." (*Trop v. Sony Pictures Entm't Inc.,* 129 Cal.App.4th 1133, 1145 (2005).) Regarding employment, it includes situations where the employer expressly states that it acted against the employee on an unlawful basis. (*DeJung v. Superior Court,* 169 Cal.App.4th 533, 550 (2008) (finding direct evidence of age discrimination where the employer told plaintiff they would not hire him because they were "looking for someone younger"); *Green v. State,* 42 Cal.4th 254, 275 (2007) (finding direct evidence of disability

discrimination where supervisor told employee that he could not return to work because he had hepatitis C).)

In both the District Court and his brief, Robinson argues that Lyndon's email to him which stated that PPG decided not to move forward with him because he was "too senior" constitutes direct evidence of age discrimination. As the District Court correctly found, this is not direct evidence of age discrimination because it requires the "presumption" that Sebold made this statement, which is contested by the undisputed evidence. (8-ER-1428 ¶11, 1448:19-1449:21.) As the District Court explained, "[t]he phrase 'too senior' was Lyndon's, not Sebold's, and one must speculate to conclude that Sebold himself used this phrase." (1-ER-17-18.)

Moreover, even if Sebold did use the phrase "too senior," there is no evidence to support a finding that he meant "too old" as insinuated by Robinson. Instead, the undisputed evidence is that the phrase "too senior" meant that Robinson was "overqualified" for the job, not that he was "too old." (4-ER-558 ¶32; 8-ER-1428 ¶11, 1448:19-1449:21.) As this District Court explained, "[w]hen the Court places Robinson's single piece of purportedly direct evidence in context with the rest of the record, it becomes clear that 'too senior' does not necessarily mean 'too old,' and that some additional inference is required." (1-ER-17.)

To the contrary, courts have found that nearly identical comments are not evidence of age-bias. (*Goodman v. Raytheon Co.*, No. B252818, 2014 WL 6438725,

at *10 (Cal. Ct. App. Nov. 17,2014) (noting that "senior guy" and "super senior" are not "negative, age-related comment[s]" and instead "as likely describes a person with seniority, like [plaintiff], as it does an elderly person"); *Villareal v. ExxonMobil Corp.,* No. B245662, 2014 WL 1789547, at *5 (Cal. Ct. App. May 6, 2014) (concluding that trial court correctly interpreted the statement that plaintiff was "too senior" referred to seniority rather than age and affirmed summary judgment). And, courts afford such comments even less weight when, as here, they are not spoken directly to the plaintiff but are instead relayed through a third-party. (*Lomax v.Sellenthin,* 1999 WL 281120, at *5 n.4 (N.D. Cal. Apr. 26, 1999) (finding that plaintiff's statement that she had been approached by another employee who informed her that his wife relayed racist remarks made by the defendant was a stray remark that was insufficient to show discriminatory intent by itself).)

Here, as the District Court properly found, Robinson fails to establish a prima facie case of age discrimination because "too much in the record militates against the conclusions Robinson urges-first, that Sebold himself said 'too senior,' and second that he meant 'too old' by it-for the Court to conclude that Lyndon's email constitutes direct evidence of discrimination on the part of PPG ..." (1-ER-17.)

### b. Robinson Did Not Introduce Any Circumstantial Evidence of Discrimination.

Robinson argues he demonstrated a "chain of inferences through a 'convincing mosaic of circumstantial evidence' that would permit a jury to infer

unlawful [discrimination]" since a "convincing mosaic of circumstantial evidence" often includes "suspicious timing, ambiguous statements (oral or written) and other 'bits and pieces'" as well as "evidence that the employer offered a pretextual reason for" the decision not to hire. *Id.* (AOB 25.) Here, no such chain of inferences can be drawn.

There is no evidence of suspicious timing because the undisputed evidence is that PPG was not aware of Robinson's age when it made its employment decision. (4-ER-560 ¶35, 561 ¶36; 8-ER-1428-1429 ¶¶10, 12, 1470.) Similarly, there is insufficient evidence of ambiguous statements made by PPG because Lyndon, who wrote the email which stated Robinson was "too senior," testified it meant "overqualified." (8-ER-1448:19-1449:21.) Moreover, there is no credible support for Robinson's contention that Sebold made comments about "looking for younger people to develop into the role" during his interview. (AOB 36.) This contention was not alleged in Robinson's emails with Lyndon, the DFEH Charge, his Complaint, or any discovery responses, but raised for the first time in opposition to summary judgment.

Moreover, as the District Court explains, Robinson's vague references to another job opening at PPG which he was not offered is speculation:

> Robinson makes scattered references throughout his Opposition to a third job opening at PPG which he was not offered. Robinson suggests PPG was concealing this opportunity from him, but this assertion is based entirely

> on speculation. Nothing credible in the record suggests PPG was hiding any job opportunities from Robinson …

(1-ER-18.)

In short, Robinson's speculative and conclusory assertions do not overcome the undisputed evidence which shows that Robinson cannot establish any claim for age discrimination and summary judgment should be affirmed.

### (1) PPG Established a Legitimate, Non-Discriminatory Reason for Its Hiring Decision.

A reason is "legitimate" if it is "facially unrelated to a prohibited bias, and which if true, would preclude a finding of discrimination." (*Guz*, 24 Cal.4th at 358.) Here, the legitimate, non-discriminatory business reasons for not hiring Robinson are undisputed: (1) Robinson had no direct experience manufacturing coatings and sealants, and (2) the two internal candidates who were promoted instead of Robinson did have that experience. (4-ER-569 ¶45; 5-ER-679 ¶5, 690-694; 8-ER-1429 ¶14.)

Robinson's contention that since he was considered "overqualified" it necessarily means he was "qualified" for the job is unavailing. In an analogous failure-to-hire case, this Ninth Circuit held that a company's refusal to hire a job applicant who was over 40 years old on the grounds that he was overqualified for the position "did not constitute age discrimination." (*E.E.O.C. v. Ins. Co. of N. Am.*, 49 F.3d 1418, 1421 (9th Cir. 1995).) The Court recognized that employers may have

- 49 -

legitimate concerns for hiring an overqualified candidate and can reject overqualified applicants if there is a reason for doing so. (*Id.*)

Here, too, PPG had legitimate reasons not to hire Robinson despite his apparent "overqualification." Robinson's prior experience was in management, but PPG's job was not a management position. It was a front-line supervisor role, requiring a deep knowledge of the process of manufacturing coatings and sealants. (8-ER-1431.) As the District Court detailed, PPG had legitimate business concerns for not hiring Robinson:

> PPG presents evidence by way of Sebold's Declaration that Sebold had concerns when Robinson, during his phone interview, said he was interested in the job's 'growth potential.' (Sebold Decl. ¶ 5; Lyndon Follow-Up Email.) Sebold was concerned that Robinson would find the role unfulfilling and would seek to promote out of the position or find another job. (Sebold Decl. ¶ 5.) Because PPG was interested in hiring a candidate who would stay content in the role, (*id.*), Sebold's concerns constitute a legitimate business reason not to have hired Robinson …

(1-ER-20.)

The undisputed evidence in the record before this Court establishes that PPG has a legitimate non-discriminatory reason for not hiring Robinson.

### (2)  Robinson Failed to Demonstrate Pretext.

Even if Robinson can establish a prima facie case of age discrimination, his claim still fails unless he is able to show by specific and "substantial" evidence that PPG's legitimate reason for its decision is pretextual. (*Coleman v. Quaker Oats*, 232

F.3d 1271, 1282 (9th Cir. 2000).) Mere "speculation cannot be regarded as substantial responsive evidence … In order to raise an issue as the employer's credibility, the employee must set forth specific facts demonstrating" implausibility or inconsistencies in the employer's legitimate reasons for its action. (*Cucuzza v. City of Santa Clara,* 104 Cal.App.4th 1031, 1038-39 (2001).) Robinson cannot rely on speculation to support his claims. (*Tarin v. County of Los Angeles*, 123 F.3d 1259, 1265 (9th Cir. 1997) (speculation without supporting evidence are not sufficient to refute employer's legitimate reasons for adverse employment action).

In a failed attempt to show pretext, Robinson argues he was more qualified than the two candidates that were hired. The District Court properly rejected this faulty argument finding:

> Here, however, Robinson points out isolated incidents and facts that only weakly suggest the hired candidates were unqualified or that he was more qualified. The fact remains that both these candidates were already employees of the company and had direct experience manufacturing sealants and coatings. Robinson possessed neither of these traits. Therefore, to show that he was more qualified than the hired candidates in a way that would materially affect the pretext analysis, Robinson needed to proffer strong and significant evidence that he was the better candidate in other ways. The evidence Robinson submits to this end is insufficient, even when drawing all reasonable inferences in his favor.

(1-ER-21.)

Indeed, here, one of the candidates PPG hired was only four years younger than Robinson and part of the protected class. (8-ER-1420 ¶5.) Evidence that the individual the employer ultimately hired is in the same protected class as the plaintiff is generally considered strong evidence of a lack of pretext, because it suggests the plaintiff was rejected not because of his protected characteristic but instead for some other reason. (*Begnal v. Canfield & Assocs., Inc.,* 78 Cal.App.4th 66, 76 (2000).)

Here, the District Court correctly found "[b]eyond the 'too senior' comment itself, Robinson's remaining showing of pretext is pervasively weak. Robinson fails to raise a triable issue regarding discriminatory motive ..." (1-ER-23.)

The District Court's grant of summary judgment as to Robinson's age discrimination claim should be affirmed.

## 2. The District Court Properly Granted Summary Judgment on Robinson's Claim for Retaliation.

To establish a prima facie case for retaliation, Robinson must show that he: (1) engaged in a protected activity; (2) PPG subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA,* 36 Cal.4th 1028, 1044 (2005).) Just like his discrimination claim, the District Court also rightly determined that summary judgment was proper as to Robinson's retaliation claim finding it "deficient on two separate bases. The first is the lack of protected activity, analysis of which does not involve burden-shifting. The second is the lack of a nexus to the asserted protected

activity, analysis of which does involve burden shifting." (1-ER-23-24.)

### a. Robinson Cannot Establish a Prima Facie Case of Retaliation.

A retaliation claim under FEHA may be brought by an employee who has complained of conduct that the employee reasonably believes to be discriminatory even if a court later determines the conduct was not actually prohibited. (*Yanowitz*, 36 Cal.4th at 1046.) But, "[s]tanding alone, an employee's unarticulated belief that the employer is engaging in discrimination will not suffice to establish protected conduct for purposes of establishing a prima facie case of retaliation." (*Id.*) Although an employee need not formally file a charge of discrimination to qualify as protected activity, "complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct." (*Id.*)

Here, Robinson alleges he engaged in protected activity by complaining of age discrimination, but admittedly never complained to PPG. Instead, Robinson's only evidence is his email to Lyndon wherein he wrote: "I believe being too senior is the battle I am having everywhere I interview. If they are looking for someone who will be around for 20 years, I am not that guy as I am now 60 years old but I do not have any health issues. I will wait to hear what you find out." ((4-ER-559 ¶33; 8-ER-1471.) This, however, was not a complaint of discrimination but merely an inquiry about the status of his candidacy. As the District Court properly reasoned:

- 53 -

> That email, quoted above, is a statement by Robinson on the overall success of his job search. Robinson stated that he was generally finding it difficult to find a job because of his age-no more, and no less. His email is devoid of any sort of accusation toward PPG or suggestion that Robinson believed PPG was, at that point, discriminating against him because of his age. A factfinder could not view Robinson's email and reasonably conclude that it constitutes either a complaint or an opposition to PPG's violation of FEHA … This conclusion holds whether or not the Court considers Robinson's Opposition, because Robinson's Opposition raises no triable issue as to whether he engaged in a protected activity.

(1-ER-24.)

Consequently, Robinson cannot establish a prima facie case of retaliation because there is no evidence he engaged in any protected activity.

### b. No Causal Connection Exists Between Robinson's Purported Protected Activity and PPG's Actions.

Even if Robinson's email could somehow be construed as protected activity, the undisputed evidence establishes it was sent *after* PPG had already made its employment decision (4-ER-560 ¶35, 561 ¶36; 8-ER-1428-1429 ¶¶10, 12, 1470.) As the District Court explained:

> Even considering Robinson's Opposition, the record is wholly devoid of any evidence of a causal link between Robinson's email and PPG's decision not to hire him. PPG's evidence shows that by the time Lyndon relayed to Sebold any of Robinson's age-related concerns, Sebold had already made the decision not to hire Robinson. (Lyndon Follow-Up Email; Sebold Decl. ¶¶ 10, 12). Thus, any knowledge Sebold may have had of Robinson's age-related complaints could not have formed the basis for

- 54 -

Sebold's decision …

(1-ER-24-25.)

Here, it is undisputed that by the time Lyndon emailed Sebold and disclosed Robinson's age, Sebold had already determined that the other two external candidates were better suited for consideration for the role. (4-ER-561 ¶36; 8-ER-1428-1429 ¶¶10, 12.) Thus, the District Court properly found there is no causal connection between Robinson's purported "complaint" and PPG's employment decision.

Robinson contends that an email from Sebold to Lyndon acknowledges learning of Plaintiff's "complaint." (AOB 38.) Not so. Sebold's email to Lyndon dated November 29, 2018 – more than a month *after* it is undisputed PPG made its employment decision - states: "[A]re you aware we have an issue with one from the past that was not selected for an on site interview." (*Id.*) The "issue" Sebold was referring to was the DFEH Charge that Robinson had filed nine days earlier which was the first time PPG heard about his "complaint." (15-ER-3084-3087.)

In short, under any analysis, the District Court's grant of summary judgment as to Robinson's retaliation claim is correct and should be affirmed.

### 3.     The District Court Properly Granted Summary Judgment on Robinson's Harassment Claim.

To prevail on his harassment claim, Robinson must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the

- 55 -

harassing conduct was based on his protected class; (4) the harassing conduct was sufficiently pervasive to alter the conditions of his employment and create an abusive working environment; and (5) there is a basis for holding the employer liable. (*Washington v. Lowes HIW, Inc.*, 75 F. Supp. 3d 1240, 1250 (N.D. Cal. 2014) (applying California law); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608 (1989); Gov't Code § 12940(j)(1).) Here, the District Court correctly found Robinson failed to establish any viable claim for harassment. (1-ER-26-27.)

> **a.** **The Law of the Case Applies to the District Court's Prior Determination that Robinson Did Not – and Can Not – State a Viable Claim for Harassment Against Sebold.**

The law of the case doctrine holds that "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." (*Gonzalez v. Arizona,* 677 F.3d 383, 389 n. 4 (9th Cir. 2012).) Previously in determining that Sebold was a sham defendant, the District Court determined that Robinson's allegations do not support a claim of harassment as a matter of law. (1-ER-40-44.) Robinson did not amend his Complaint to expand his harassment claim beyond the scope the District Court previously ruled was deficient. (1-ER-26.) Given this, the District Court properly reasoned that "Robinson never alleged actionable harassment on the part of Sebold or anyone else at PPG," so PPG is entitled to judgment as a matter of law. (1-ER-26.)

### b. Robinson Failed to Identify Any Instances of Severe or Pervasive Harassment.

To constitute harassment under the FEHA, a workplace must be "permeated with discriminatory intimidation, ridicule and insult." (*Mokler v. County of Orange*, 157 Cal.App.4th 121, 145 (2007); *Lyle v. Warner Bros. Television Prod.*, 38 Cal.4th 264, 295 (2006).) To meet this high standard, Robinson must show that the allegedly harassing conduct "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee, and that he was actually offended." (*Fisher,* 214 Cal.App.3d at 609-10.) Key considerations in assessing a harassment claim include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (*Miller,* 36 Cal.4th 446, 462 (2005); *Etter,* 67 Cal.App.4th at 466.)

Robinson's claim for harassment fails because he does not establish any harassing conduct took place. Here, Robinson merely alleges Sebold made an isolated, indirect remark to a third-party that Robinson was "too senior [for the job]" in the Complaint. This allegation is not severe nor was it pervasive as it was a single alleged comment made to a third-party. This is Robinson's entire theory of the case, to which he is limited on summary judgment. (*Wasco Prods., Inc. v. Southwall Tech, Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Summary judgment is not a procedural

- 57 -

second chance" for Robinson "to flesh out inadequate pleadings."); *James v. Dependency Legal Grp.,* 253 F.Supp.3d 1077, 1090 (S.D. Cal. 2015).)

Regardless, even if Robinson's additional arguments are considered, they have no merit. Robinson admitted at deposition that he does not remember what Sebold said that he believes was harassment. (1-ER-1460:9-12.) And, Robinson could not remember any details of how Sebold purportedly "harassed" him by asking questions about his work history beyond what was listed on his resume. (8-ER-1459:25-1460:8.)

Robinson utterly fails to allege any act that constitutes "harassment" as a matter of law. Given this, the District Court's grant of summary judgment should be affirmed.

### 4. The District Court Properly Granted Summary Judgment on Robinson's Claim for Failure to Prevent Discrimination, Retaliation, and Harassment.

As the District Court properly found, Robinson's failure to prevent discrimination, retaliation, and harassment claim is derivative. (1-ER-27.) There can be no action for failure to prevent discrimination, harassment or retaliation if no such unlawful conduct occurred. (*Trujillo v. Northern County Transit Dist.,* 63 Cal.App.4th 280, 289 (1998) ("[T]here's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no

discrimination occurred.") It necessarily follows that Robinson's derivative cause of action fails. Thus, the District Court's grant of summary judgment as to Robinson's fourth claim should be affirmed.

### 5.    The District Court Properly Granted Summary Judgment on Robinson's Claim for Punitive Damages.

Robinson claims the District Court's determination that "PPG is entitled to summary judgment as to all of Robinson's claims, and accordingly, PPG's request for summary judgment on the issue of punitive damages is moot[]" (1-ER-27) is in error because genuine issues of material fact exist. (AOB 40-41.) To prevail on a claim for punitive damages, Robinson must prove "by *clear and convincing evidence* that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code § 3294(a), emphasis added; *Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1121 (2001).) The clear and convincing standard requires "that the evidence be so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonably mind." (*Mock v. Michigan Millers Mutual Ins. Co.,* 4 Cal.App.4th 306, 332 (1992).) Robinson's Complaint is devoid of any such evidence.

To the contrary, Robinson's punitive damage claim fails because he has no evidence, let alone clear and convincing evidence, that PPG engaged in any malicious, oppressive, or fraudulent conduct towards him. (Civ. Code § 3294(c); *White v. Ultamar, Inc.,* 21 Cal.4th 563, 569 (1992).) Indeed, Robinson's entire

punitive damage claim is premised on his unsupported allegation without any evidentiary support that "Appellant complained and Appellee never investigated his complaint." (AOB 41.) This contention, even if supported, is woefully deficient to meet Robinson's clear and convincing burden of proof. As such, Robinson cannot recover punitive damages and the order of the District Court should be affirmed.

## C. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION.

Robinson purports that the District Court abused its discretion when it ultimately denied his request for an extension to oppose PPG's motion for summary judgment, when it struck his "Corrected Separate Statement" filed after PPG's reply brief and disregarded his late filed opposition. Simply put, Robinson is wrong. The actions taken by the District Court were lawful and within its discretion. Certainly, the actions of the District Court cannot be construed as "beyond the pale of reasonable justification under the circumstances." (*Boyd,* 576 F.3d at 943; *Harman,* 211 F.3d 1172 at 1175.)

To the contrary, with regard to Robinson's request for a continuance to conduct additional discovery, "[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." (*California Union Ins. Co.,* 914 F.2d at 1278; *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,* 353 Fd 1125,

1130 (9th Cir. 2004).) Here, the record establishes that Robinson had *five times* longer than is provided by Local Rules to file his opposition, yet he still failed to do so in a timely manner. (1-ER-9:22-10:9.)

Regardless, the District Court found Robinson's contention that additional time was needed to conduct discovery disingenuous because he had more than a year to conduct necessary discovery but failed to do so. (1-ER-10:10-22.) Instead, the District Court found that Robinson's counsel's strategy in seeking extensions to conduct additional discovery was purposeful and nefarious. (1-ER-10:23-11:4.) It necessarily follows that the District Court did not abuse its discretion in denying Robinson additional extensions to oppose PPG's motion for summary judgment.

Likewise, the District Court did not abuse its discretion when it struck his "Corrected Separate Statement" filed after PPG's reply brief. (*Chambers,* 501 U.S. 32; *America United for Kids v. Rousseau,* 985 F.3d at 1087).) As the District Court explained, "Accepting Robinson's Corrected Separate Statement would render PPG's Reply Separate Statement moot, and the Court would need to provide PPG with an opportunity to amend its Reply Separate Statement – all at additional cost to PPG and further delaying the resolution of this case. *See* Fed. R. Civ. P. 1." (1-ER-13:1-7.)

Yet, despite Robinson's and his counsel's repeated failure to timely file his papers in opposition, in direct contravention to Robinsons' contention otherwise, the

District Court ultimately granted summary judgment on the merits while considering Robinson's untimely filings. (1-ER-4-28.) This does not constitute an abuse of discretion by the District Court.

## VIII. CONCLUSION

The District Court properly denied Robinson's motion to remand because it has diversity jurisdiction over this matter. Summary judgment was then properly granted in favor of PPG since Robinson has failed to advance any grounds that would warrant a reversal of the District Court's well-reasoned decision. Lastly, the District Court did not abuse its discretion. Accordingly, PPG respectfully requests the District Court's order denying Robinson's motion for remand, order granting the motion for summary judgment, and the resulting judgment be affirmed.

Date: November 8, 2022        LITTLER MENDELSON, P.C.

                              */s/ Craig G. Staub*
                              Craig G. Staub, Esq.
                              Amelia McDermott, Esq.
                              Attorneys for Defendant and Appellee
                              PPG INDUSTRIES, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule-1, I certify that the attached Appellee's Answering Brief is proportionately spaced, has a typeface of 14 points or more, and contains 13,994 words, which is based upon the word count of the word processing system used to prepare this brief.

Date: November 8, 2022   LITTLER MENDELSON, P.C.

                 */s/ Craig G. Staub*
                Craig G. Staub, Esq.
                Amelia McDermott, Esq.
                Attorneys for Defendant and Appellee
                PPG INDUSTRIES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2022, I electronically filed

**APPELLEE'S ANSWERING BRIEF** with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit using the Appellate

Electronic Filing system.

I certify that all participants in the case are registered CM/ECF users, and

that service will be accomplished by the Appellate CM/ECF system on all

parties and their attorneys of record.

Date:  November 8, 2022          */s/ Craig G. Staub*
                                 Craig G. Staub, Esq.


                                 LITTLER MENDELSON, P.C.
                                 Attorneys for Defendant and Appellee
                                 PPG INDUSTRIES, INC.